IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DE ANZA ANGEL DIMAS,

    Plaintiff,

    vs.                                                                                    No. 1:21-cv-00978-KWR-JFR

PECOS INDEPENDENT SCHOOL DISTRICT BOARD OF EDUCATION;
PECOS HIGH SCHOOL; MICHAEL FLORES, *in his individual capacity*; and
FRED TRUJILLO, Superintendent, *in his individual and official capacity*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Defendants' Joint Motion and Memorandum for Partial Judgment on the Pleadings (**Doc. 21**), filed January 7, 2022. Having reviewed the parties' pleadings and the relevant law, the Court finds that the motion is **WELL TAKEN**, and therefore, is **GRANTED**. Counts IV and VI are **DISMISSED WITH PREJUDICE**. Counts I and V are **DISMISSED WITHOUT PREJUDICE** and the Court grants Plaintiff leave to amend these counts.

### BACKGROUND

This case is a civil rights suit arising from Plaintiff De Anza Dimas' claims that she faced discriminatory treatment while a high school student because of her sexual orientation. In 2019, Plaintiff was a senior student attending Pecos High School and was a member of the girls' basketball team. *See* **Doc. 1-2, Ex. A**, ¶¶ **2, 11**. Plaintiff was in a same-sex relationship with another member of the team. *Id.* ¶ **12**.

On January 4, 2019, Plaintiff, her girlfriend, and other members of the girls' basketball and cheerleading teams were on a bus and scheduled to depart for a basketball tournament. *Id.* Before

departing, Defendant Michael Flores, Athletic Coordinator for Pecos High School, asked Plaintiff and her girlfriend to exit the bus. *Id.* ¶ 14. Outside the bus doors, Defendant Flores questioned Plaintiff and her girlfriend, and asked Plaintiff whether she "thought it was appropriate for her to be sitting in the same bus seat with her same-sex girlfriend." *Id.* ¶ 16. Defendant Flores informed Plaintiff that "students involved in dating relationships could not sit together on the bus or cohabit the same rooms during overnight trips." *Id.* ¶¶ 17–18. Defendant Flores then allowed Plaintiff to return to the bus, where other students asked Plaintiff "why she had been taken outside, separated, and asked to sit elsewhere." *Id.* ¶ 19. Plaintiff alleges that as a result of Defendant Flores' public inquiry, she was "highly humiliated, disrespected, and distressed at being forcibly 'outed' before her teammates and the other students." *Id.*

After this incident, Plaintiff wrote a complaint to school administrators and informed them of the conversation initiated by Defendant Flores. In response, on January 9, 2019, Defendant Fred Trujillo, Superintendent of the Pecos Independent School District, informed Plaintiff of the school's policy of "separating students based on dating relationships." *Id.* ¶ 21. Shortly after receipt of this letter, Plaintiff and her mother attended a meeting with Defendant Trujillo, Defendant Flores, and the Principal of Pecos High School, where Plaintiff and her mother stated their belief that "the unwritten procedure [of separating students] was unfairly singling out LGBTQ+[1] students, and [was] not being enforced against opposite gender couples throughout the district." *Id.* ¶ 22, 27.

Plaintiff alleges that there was an "ongoing monitoring of the students' personal relationships" by Defendant Flores, which had a "chilling effect on Plaintiff Dimas and her family and other similarly situated LGBTQ+ students." *Id.* ¶ 31. Within a week of the incident, the

---

[1] "LGBTQ+" is an acronym that stands for lesbian, gay, bisexual, transgender, queer (or sometimes, questioning), and others.

assistant basketball coach approached Plaintiff and informed her that Defendant Flores continued to require him to enforce the policy of separating students based on their personal relationships. *Id.* ¶ **30**. Months later, in April 2019, the high school softball coach initiated two conversations with Plaintiff whereby he mentioned that Defendant Flores continued to require coaches to enforce the separation of students during "away games," but this coach stated he would not enforce the policy. *Id.* ¶¶ **23–25**. Plaintiff graduated from high school shortly after, but asserts that the Pecos Independent School District did not stop enforcing the "discriminatory procedure" until August 30, 2019. *Id.* ¶¶ **26, 32**.

As a result of these events, Plaintiff filed suit in the Fourth Judicial District Court, San Miguel County, State of New Mexico against Defendants Pecos Independent School District, Pecos High School, and Defendants Flores and Trujillo. Plaintiff alleges the following:

| | |
|---|---|
| Count I: | Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*; against all Defendants |
| Count II: | Violation of 42 U.S.C. § 1983 for Deprivation of Procedural and Substantive Due Process and Equal Protection; against all Defendants |
| Count III: | Violation of 42 U.S.C. § 1983 for Failure to Train and Supervise as to Discriminatory Enforcement of School Policy; against Pecos Independent School District Board of Education and Fred Trujillo |
| Count IV: | Violation of the New Mexico Constitution Art. II, § 18; against all Defendants |
| Count V: | Violation of the New Mexico Human Rights Act, NMSA § 28-1-7; against all Defendants |
| Count VI: | State Law Tort Claim for Invasion of Privacy; against all Defendants |

Defendants removed this case to this Court (**Doc. 1**) and subsequently filed a motion for partial judgment on the pleadings. **Doc. 21**.

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits any party to move for judgment on the pleadings if no material facts are in dispute, and the dispute can be resolved on both the pleadings and any facts of which the Court can take judicial notice. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings generally follows Rule 12(b)(6) standards. *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). To survive a motion to dismiss, a complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The Court must draw all reasonable inferences in Plaintiff's favor. *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). However, mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

## DISCUSSION

### I. The Title IX of the Education Amendments Claim (Count I).

Title IX of the Education Amendments of 1972 ("Title IX") prohibits sex discrimination by recipients of federal education funding. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167,

173 (2005). Specifically, Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Discrimination under Title IX "is not limited to disparate provision of programs, aid, benefits or services or inequitable application of rules or sanctions." *See Hayut v. State Univ. of New York*, 352 F.3d 733, 750 (2d Cir. 2003). It also encompasses sexual harassment that creates an educational environment sufficiently hostile to deprive the student of access to the educational opportunities or benefits provided by the school. *Id.* Where sex-based discrimination is intentional, Title IX is enforceable through a cause of action for which money damages are available. *Accord Jackson*, 544 U.S. at 173.

Plaintiff brings her claim under Title IX, alleging that she was "denied Equal Protection or equal participation in schooling, education, and school activities" because she was "LGBTQ+" or in a same-sex relationship. *See* **Doc. 23, at 20**. Defendants move to dismiss because they allege Plaintiff cannot plausibly state a claim upon which relief can be granted against any Defendant. The Court agrees in part.

**A. The Court Dismisses the Title IX Claim against Defendants Trujillo and Flores.**

First, Defendants move to dismiss the Title IX claim against Defendants Flores and Trujillo (the "Individual Defendants") because they assert there can be no individual liability under Title IX. *See* **Doc. 21, at 3–4**. Plaintiff appears to concede that there can be no individual liability. *See* **Doc. 23, at 8–9**. The Court finds that Plaintiff's Title IX claims against the individual school officials fail as a matter of law.

Title IX claims can only be initiated against institutions and programs that receive federal funds, and "it has consistently been interpreted as not authorizing suit against school officials,

5

teachers, and other individuals." *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009); *see also Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052, 1068 (D.N.M. 2010) ("Title IX does not authorize a cause of action against individuals; rather, it creates a right enforceable against educational institutions only."). Accordingly, the Court will dismiss the Title IX claims against the Individual Defendants.

Still, Plaintiff argues that the Court should allow the Title IX claim to proceed against Defendant Trujillo in his official capacity because "Department of Justice (DOJ) guidance allows for identical official capacity claims." *See* **Doc. 23, at 9**. Defendants contend that "official capacity claims" are "identical to [claims] made against a government entity," and therefore, such a claim would be "unnecessary and redundant." *See* **Doc. 29, at 2**. The Court agrees.

Suits brought against public officials in their official capacities are treated, "in all respects other than name," as suits against the government entity, "[a]s long as the government entity receives notice and an opportunity to respond." *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). Here, Defendant Trujillo was Superintendent of Pecos Independent School District ("PISD"). PISD had notice and an opportunity to respond to this suit as it is a defendant in this case. Thus, any official-capacity claims asserted against Defendant Trujillo are coextensive with the claims against Defendant PISD and are redundant. Thus, the Court concludes that Plaintiff cannot maintain a Title IX claim against Defendant Trujillo in his official capacity.

   **B. The Court Dismisses the Title IX Claim against Defendants PISD and Pecos High School.**

Defendants argue that Plaintiff's claim against the remaining Defendants must be dismissed because the conduct at issue here was not based on Plaintiff's gender, nor did it constitute "discrimination because of sex." *See* **Doc. 21, at 5**. The Court disagrees.

To state a cause of action under Title IX, a plaintiff must show: "(1) that he or she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal assistance; and (3) that the exclusion from the program was on the basis of sex." *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996).

Several courts have held that Title IX's prohibition against sex-based discrimination includes discrimination on the basis of sexual orientation and gender expression. *See, e.g.*, *Videckis v. Pepperdine Univ.*, 150 F. Supp. 3d 1151, 1160 (C.D. Cal. 2015) (finding that sexual orientation discrimination is a form of sex or gender discrimination under Title IX, and attempting to "categorically separate 'sexual orientation discrimination' from discrimination on the basis of sex or from gender stereotypes…would result in a false choice"); *Harrington ex rel. Harrington v. City of Attleboro*, No. 15-CV-12769-DJC, 2018 WL 475000, at *5 (D. Mass. Jan. 17, 2018) (concluding that "[a]ctionable sex stereotypes [under Title IX] include those based on sexual orientation").

Additionally, in interpreting Title IX, courts often look to interpretations of Title VII of the Civil Rights Act of 1964 ("Title VII"). *See, e.g.*, *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 617 n.1 (1999) (noting that the Supreme Court has "looked to its Title VII interpretations of discrimination in illuminating Title IX of the Education Amendments of 1972"); *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001) ("Courts have generally assessed Title IX discrimination claims under the same legal analysis as Title VII claims."). In *Bostock v. Clayton County*, the Supreme Court held that Title VII's

prohibition on employment discrimination "because of sex" encompasses discrimination based on sexual orientation "because it is impossible to discriminate against a person for being homosexual…without discriminating against that individual based on sex." 140 S. Ct. 1731, 1739–41 (2020). For example, if an employer fires a male employee "for no reason other than the fact he is attracted to men, the employer discriminates against him for traits or actions it tolerates in his female colleague." *Id.* at 1741. Thus, "[f]or an employer to discriminate against employees for being homosexual or transgender, the employer must intentionally discriminate against individual men and women in part because of sex." *Id.* at 1743; *see also Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 616–17 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *cert. denied*, 141 S. Ct. 2878 (2021) (holding that *Bostock* informed the court's conclusion that under Title IX, a school policy excluding a student from using the boys' restroom because the student was a transgender male was "on the basis of sex"). Therefore, this Court may reasonably conclude that a plaintiff's allegation of discrimination due to sexual orientation falls within Title IX's broader prohibition against discrimination on the basis of sex.

Next, the Court turns to the standards governing this particular Title IX claim. A recipient of federal funds "intentionally violates Title IX, and is subject to a private damages action, where the recipient is deliberately indifferent to known acts of teacher-student discrimination." *Davis ex. rel. LaShonda D v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). Where teacher-on-student harassment or discrimination is involved, to plausibly state a Title IX claim, a plaintiff must allege: (1) the school or school district was deliberately indifferent to acts of harassment of which it has actual knowledge, (2) the harassment was reported to an appropriate person with the authority to take corrective action to end the discrimination, and (3) the harassment was so severe, pervasive and objectively offensive that it, (4) deprived the victim of access to the educational

8

benefits or opportunities provided by the school. *See Escue v. N. OK Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006); *Karasek v. Regents of Univ. of California*, 956 F.3d 1093, 1105 (9th Cir. 2020); *see also Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170, 1177–78 (10th Cir. 2007) (holding that the actual notice or knowledge element does not apply in cases that involve official school policy).

In the instant case, Defendants argue that Plaintiff has failed to plausibly plead the third and fourth elements. First, Defendants contend that the claim should be dismissed because Plaintiff has not alleged severe, pervasive, and objectively offensive conduct. *See* **Doc. 21, at 5**; **Doc. 27, at 3–4**. Defendants argue that "a single instance of harassment" cannot form the basis of a Title IX claim. *See* **Doc. 21, at 5**. In response, Plaintiff argues that the conduct at issue here was not limited to the "forty second recorded conversation outside the bus," rather, there was an "institutional pattern of discriminatory conduct." *See* **Doc. 23, at 10**. Plaintiff asserts that Defendants had many opportunities to stop enforcing the bus policy, but instead engaged in "targeting and selective enforcement [of the policy] through subordinate employees." ***Id.* at 11–14**.

Generally, a single instance of sexual harassment cannot, by definition, be pervasive. *See Schaefer*, 716 F. Supp. 2d at 1082. However, "there is no magic number of incidents required to establish a hostile environment." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007). Rather, determining whether conduct amounts to a hostile environment characterized by severe, persistent, and objectively offensive gender-based harassment depends on a variety of factors, including the ages of the alleged harasser and victim, the number of individuals involved, and the type, frequency, and duration of the conduct. *See Davis*, 526 U.S. at 651. This is a highly

9

factual and context-specific determination, requiring consideration of a full "constellation of surrounding circumstances, expectations, and relationships." *Id.* (internal quotations omitted).

Here, Plaintiff has plausibly alleged more than a single instance of harassment. Specifically, Plaintiff alleged that she was pulled off the school bus and publicly questioned by Defendant Flores (*see* **Doc. 1-2, Ex. A**, ¶¶ **14–19**); that her personal relationship with her same-sex partner was monitored while she was a student, and one week after the first incident, she was approached by a sports coach regarding sitting with her same-sex partner on the bus (*id.* ¶¶ **30–31**); and months later, on two separate occasions, a different sports coach spoke to Plaintiff again regarding sitting with her same-sex partner (*id.* ¶¶ **23–26**).

Unlike *Higgins v. Saavedra*, No. CIV 17-0234 RB/LF, 2018 WL 327241, at *7 (D.N.M. Jan. 8, 2018), where the gender-based incident alleged by the plaintiff was confined to one episode of student-to-student harassment, here, Plaintiff has alleged multiple gender-based incidents and the teacher-student dynamic provides important context to Plaintiff's experience. From the Complaint, the Court can reasonably infer that the conduct—the monitoring or inquiries—persisted while Plaintiff continued to play sports, from the date of the first incident and until Plaintiff's graduation from Pecos High School four months later. At a later stage of this litigation, it may be determined that this behavior does not rise to the level of severe, pervasive, and objectively unreasonable conduct. However, at this stage, the Court must construe all factual inferences in Plaintiff's favor, and Plaintiff has plausibly alleged that the conduct was severe, pervasive and objectively offensive.

Next, Defendants argue that the Title IX claim must be dismissed because Plaintiff has not alleged that she was excluded from participating in PISD's programs. *See* **Doc. 21, at 4–5**; **Doc. 27, at 3**. Plaintiff does not meaningfully respond to Defendant's argument. *See* **Doc. 23, at 12–**

**15**. Here, the Court finds Plaintiff has not sufficiently identified educational opportunities or benefits of which she was effectively deprived as a result of the circumstances presented.

A deprivation can be found if there is a "concrete, negative effect" on the plaintiff's ability to receive an education or participate in sports. *See Davis*, 526 U.S. at 654. Examples of a negative impact on access may include dropping grades, being diagnosed with behavioral or anxiety disorders, and becoming homebound or hospitalized due to harassment, physical violence, or sexual assault. *See Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1028 (E.D. Cal. 2009) (collecting cases). Plaintiff alleges that she was deprived a "fundamental right to an education and equal participation in school related activities," and she suffered "severe emotional distress[,] damage to her reputation," and "disruption to her happiness and quality of life." **Doc. 1-2, Ex. A**, ¶¶ **38, 48**. However, even assuming these facts are true, Plaintiff fails to allege, beyond conclusory statements, any deprivation of educational benefits or access. Thus, the Court must dismiss Plaintiff's Title IX claim for failure to plausibly plead the fourth element. Overall, Plaintiff's allegations fall short of stating a claim under Title IX against Defendants PISD and Pecos High School.

**II.     The New Mexico Constitution (Count IV) and Invasion of Privacy (Count VI) Claims.**

Defendants argue that Plaintiff's claims under the New Mexico Constitution and for invasion of privacy must fail because there is no waiver of immunity for such claims under the New Mexico Tort Claims Act ("NMTCA"). *See* **Doc. 21, at 6, 10**. Defendants also argue that these claims must fail because the statute of limitations has run on both claims. *Id.* **at 11**.

The NMTCA requires a governmental entity both to provide a defense for, and to pay the settlement or any final judgment entered against, a public employee for a "violation of property rights or any rights, privileges or immunities secured by…the constitution and laws of New

Mexico." N.M. Stat. Ann. § 41-4-4(B)(2), (D)(2). The Act is "the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived." *Id.* § 41-4-17(A).

However, the NMTCA preserves sovereign immunity against tort claims for state governmental entities and public employees acting within the scope of duty, unless specifically waived. *See Fernandez v. Mora-San Miguel Elec. Co-op., Inc.*, 462 F.3d 1244, 1250 (10th Cir. 2006); *see also Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) ("We have long recognized that a State's sovereign immunity is a personal privilege which it may waive at pleasure…The decision to waive that immunity, however, is altogether voluntary on the part of the sovereignty."). In other words, a governmental entity of New Mexico may not be sued unless the plaintiff's cause of action fits within one of the exceptions to the immunity granted to governmental entities and public employees in the NMTCA.

New Mexico courts strictly construe "[s]tatutory provisions purporting to waive governmental immunity." *See Rutherford v. Chaves Cty.*, 2003-NMSC-010, ¶ 11, 133 N.M. 756, 759, 69 P.3d 1199, 1202; *Kreutzer v. Aldo Leopold High Sch.*, 2018-NMCA-005, ¶ 51, 409 P.3d 930, 941. The New Mexico Legislature recognized, in passing the NMTCA, the "inherently unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity." N.M. Stat. Ann. § 41-4-2(A). Nevertheless, the Legislature decided that "the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done." *Id.*

Consequently, under the NMTCA, the Court must first determine whether immunity has been waived for the claims against the governmental entities and public employees acting within the scope of their employment. Consent to be sued under the NMTCA must be specifically found

within one of the exceptions under the Act. *See Redding v. City of Truth or Consequences*, 1984-NMCA-132, ¶ 3, 102 N.M. 226, 227, 693 P.2d 594, 595. Because a plaintiff's right to recover is limited to the conditions prescribed in the Act, if the specific tort is not found in the NMTCA, or if immunity has not been waived, the cause of action may not proceed. *See Williams v. Bd. of Regents of Univ. of New Mexico*, 20 F. Supp. 3d 1177, 1187 (D.N.M. 2014).

### A. The Court Dismisses the New Mexico Constitution Claim (Count IV).

Plaintiff brings her claim for damages under Article II, section 18 of the New Mexico Constitution, and asserts that Defendants acted "within the scope of their official duties and employment as a public school district of the State of New Mexico" when they knowingly and deliberately engaged in discriminatory conduct against Plaintiff. *See* **Doc. 1-2, Ex. A**, **¶¶ 8, 60–63**. The Court concludes that Plaintiff cannot state a claim as a matter of law.

Article II, section 18 of the New Mexico Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law; nor shall any person be denied equal protection of the laws." This section also provides that "[e]quality of rights under law shall not be denied on account of the sex of any person." *Id.* However, a plaintiff "may not sue a governmental entity or its employees for a damage claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA contains a waiver of immunity." *See Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1222, 1251 (D.N.M. 2010), aff'd, 499 F. App'x 771 (10th Cir. 2012); *Valdez v. State*, 2002-NMSC-028, ¶ 12, 132 N.M. 667, 673, 54 P.3d 71, 77 ("[I]t is well established that absent a waiver of immunity under the [New Mexico] Tort Claims Act, a person may not sue the state for damages for violation of a state constitutional right.").

Here, Plaintiff does not specify which section of the NMTCA authorizes her constitutional claim for damages against Defendants, and a review of the Act shows that there is no specific

13

waiver for Plaintiff's claim.  *See* N.M. Stat. Ann. §§ 41-4-5 to -12 (enumerating eight sections of conditional and limited waivers of immunity).  New Mexico courts have "consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the [NMTCA]." *Barreras v. State of New Mexico Corr. Dep't*, 2003-NMCA-027, ¶ 24, 133 N.M. 313, 319, 62 P.3d 770, 776; *see also Lee v. Univ. of New Mexico*, 449 F. Supp. 3d 1071, 1138 (D.N.M. 2020) (dismissing a claim for damages against the University of New Mexico and other state officers where the plaintiff alleged gender bias in violation of the New Mexico Constitution because no waiver or exclusion applied under the NMTCA).  Accordingly, the Court concludes that Defendants are not subject to suits for money damages based on claims brought under the Constitution of New Mexico,[2] and Plaintiff's claim must be dismissed.

Nevertheless, Plaintiff argues that the Court may find express waiver under the NMTCA because the Individual Defendants are "law enforcement officers" and they "acted as law enforcement officers, vested with the power to maintain order and discipline of the students under their care."  *See* **Doc. 23, at 16, 18**.  Plaintiff's argument is without merit.

Section 41-4-12 of the NMTCA provides a waiver of immunity for certain torts that law enforcement officers commit and for acts committed by third parties when caused by the negligence of officers.  *See Williams*, 20 F. Supp. 3d at 1189; *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶ 7, 121 N.M. 646, 649, 916 P.2d 1313, 1316.  The

---

[2] The NMTCA does not bar a claim for injunctive relief.  *See El Dorado Utilities, Inc. v. Eldorado Area Water & Sanitation Dist.*, 2005-NMCA-036, ¶ 28, 137 N.M. 217, 224, 109 P.3d 305, 312; N.M. Stat. Ann. § 41-4-17(A) ("Nothing in this section shall be construed to prohibit any proceedings for mandamus, prohibition, habeas corpus, certiorari, injunction or quo warranto.").  Here, Plaintiff seeks injunctive relief in addition to money damages, *see* **Doc. 1-2, at 16 ¶ IV (A)**, however, Plaintiff did not assert a claim under the NMTCA, and "an independent legal source is necessary to allow a plaintiff to vindicate" her rights through an award of injunctive relief under the New Mexico Constitution.  *See Clarkson v. Bd. of Regents of New Mexico State Univ.*, No. 218CV00870KRSGBW, 2019 WL 1209779, at *5 (D.N.M. Mar. 14, 2019).

NMTCA defines a "law enforcement officer" as an officer "whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor." N.M. Stat. Ann. § 41-4-3(D).

New Mexico courts construe the definition of "law enforcement officer" strictly. *See Rayos v. State ex rel. New Mexico Dep't of Corr.*, 2014-NMCA-103, ¶ 8, 336 P.3d 428, 431. "Words used in a statute are to be given their ordinary and usual meaning unless a different intent is clearly indicated." *State ex rel. Duran v. Anaya*, 1985-NMSC-044, ¶ 10, 102 N.M. 609, 611, 698 P.2d 882, 884. Thus, the plain terms of the NMTCA require that "the 'principal duties' of a person be traditional law enforcement functions before that person will be considered a 'law enforcement officer.'" *See Johnson ex rel. Est. of Cano v. Holmes*, 377 F. Supp. 2d 1069, 1083 (D.N.M. 2004), *aff'd*, 455 F.3d 1133 (10th Cir. 2006). "The primary inquiry concerns review of the employee's day-to-day duties, responsibilities, and activities." *Id.*

Here, Plaintiff has not plausibly alleged that the Individual Defendants engaged in any activities that "involve the hallmarks" of a law enforcement officer as defined under the NMTCA. *See Johnson*, 377 F. Supp. 2d at 1083–84 (holding that having statutory duties "akin to a law enforcement officer" is insufficient, as a matter of law, to waive sovereign immunity under the NMTCA). Therefore, the Court must dismiss Count IV.

**B. The Court Dismisses the New Mexico Invasion of Privacy Claim (Count VI).**

Plaintiff also asserts an invasion of privacy claim against Defendants. Defendants similarly moved to dismiss this claim pursuant to the NMTCA. *See* **Doc. 21, at 10**. Here too, the Court must dismiss Plaintiff's claim.

New Mexico recognizes the tort of invasion of the right of privacy. *See, e.g.*, *McNutt v. New Mexico State Trib. Co.*, 1975-NMCA-085, ¶ 8, 88 N.M. 162, 165, 538 P.2d 804, 807. However, this tort has not been recognized as one for which immunity is waived. *See Ramer v. Place-Gallegos*, 1994-NMCA-101, ¶ 15, 118 N.M. 363, 366–67, 881 P.2d 723, 726–27 (concluding that sexual harassment and invasion of privacy were not among the enumerated torts for which immunity is waived under the NMTCA, but recognizing that an individual might have a claim for violation of the right to privacy under 42 U.S.C. § 1983), *overruled on other grounds by Spectron Dev. Lab'y, a Div. of Titan Corp. v. Am. Hollow Boring Co.*, 1997-NMCA-025, 123 N.M. 170, 936 P.2d 852. In the absence of an express waiver of immunity, Plaintiff may not prosecute her common-law invasion of privacy claim against a governmental entity or a public employee.[3] Because the Court concludes that Plaintiff failed to state a claim under the New Mexico Constitution or for common-law invasion of privacy, the Court declines to address Defendant's remaining arguments. *See* **Doc. 21, at 11**.

### III.     The New Mexico Human Rights Act Claim (Count V).

Defendants move to dismiss Plaintiff's New Mexico Human Rights Act ("NMHRA") claim because Plaintiff failed to allege that she exhausted her administrative remedies. *See* **Doc. 21, at 9**.

The NMHRA makes it an unlawful discriminatory practice for "any person in any public accommodation to make a distinction, directly or indirectly, in offering or refusing to offer its services, facilities, accommodations or goods to any person because of…sex, sexual orientation [or] gender identity." *See* N.M. Stat. Ann. § 28-1-7(F). The word "person" includes "the state and all of its political subdivisions." *Id.* § 28-1-2(A).

---

[3] To the extent that Plaintiff may have intended to assert claims against Defendants Flores and Trujillo as private citizens for the common law tort of invasion of privacy, the Complaint as presently pled fails to do so.

16

To bring an NMHRA suit in district court, a plaintiff must exhaust the administrative grievance process with respect to all defendants named in the district-court lawsuit. *See Luboyeski v. Hill*, 1994-NMSC-032, ¶ 7, 117 N.M. 380, 382–83, 872 P.2d 353, 355. To exhaust administrative remedies under the NMHRA, a person must: (i) file a complaint with the New Mexico Human Rights Division or the Equal Employment Opportunity Commission making sufficient allegations to support the complaint; and (ii) receive an order of nondetermination from the New Mexico Human Rights Division. *See Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 16, 127 N.M. 282, 287, 980 P.2d 65, 70. Notably, a right-to-sue letter from the Equal Employment Opportunity Commission does not substitute for an order of nondetermination from the New Mexico Human Rights Division, based on the differences in the administrative powers of each agency. *See Mitchell-Carr*, 980 P.2d at 69–70.

Plaintiff argues that she exhausted her administrative remedies because she first filed a written complaint with Defendants PISD and Trujillo and then she filed a Title IX complaint with the Office of Civil Rights of the U.S. Department of Education. *See* **Doc. 23, at 20**. Plaintiff asserts that her written complaint with PISD and the Department of Education are sufficient to show exhaustion because the New Mexico Human Rights Division "typically defers to federal agencies for the purpose of enforcing the [NMHRA]…[and] typically cross-files claims" with other federal agencies. *Id.* **at 20–21**. In response, Defendants argue that Plaintiff did not allege that she filed her charge of discrimination under the NMHRA "within 300 days following the last alleged act of discrimination," nor did she allege that she received an order of nondetermination from the New Mexico Human Rights Division. *See* **Doc. 21, at 9**; **Doc. 27, at 9**.

Generally, a complaint is not dismissed for failure to exhaust unless such failure is clear on the face of the complaint. *See, e.g.*, *Morales v. Runyon*, 844 F. Supp. 1435, 1436 (D. Kan. 1994)

17

(declining to dismiss where the failure to exhaust Title VII administrative remedies was not clear on the face of complaint).[4]  Here, Plaintiff failed to state a claim because she does not allege that she exhausted her claims administratively with the New Mexico Human Rights Commission before suing under the NMHRA.  *See Martinez v. New Mexico Dep't of Game & Fish*, No. CV 16-299 WJ/SCY, 2016 WL 10179297, at *2 (D.N.M. Sept. 19, 2016).  Further, Plaintiff provides no support for her position that exhaustion of remedies under the Department of Education's procedures for a Title IX complaint is sufficient to comply with the procedures set forth in N.M. Stat. Ann. §§ 28-1-10 and 28-1-13 of the NMHRA.  In sum, it is clear from the face of the Complaint that Plaintiff did not exhaust her claims under the NMHRA process prior to bringing this suit.  Therefore, the Court must dismiss Plaintiff's claim.

## IV.     The Plaintiff's Request for Leave to Amend.

Plaintiff summarily requests that the Court grant leave to amend so that Plaintiff may remedy "any technical deficiencies in pleading" and so that she may bring claims under the NMTCA.  *See* **Doc. 23, at 16, 22**.  At this stage, amendment should be "freely given when justice so requires." Fed. R. Civ. P. 15(a).  A court should grant leave to amend unless "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing [her] an opportunity to amend [the] complaint would be futile." *Cohen v. Longshore*, 621 F.3d 1311, 1314–15 (10th Cir. 2010) (quoting *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991)); *Staats v. Cobb*, 455 F. App'x 816, 818 (10th Cir. 2011) ("[A] court should dismiss *with leave to amend*…if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading

---

[4] At this stage, the Court may consider extraneous documents when they are central to the complaint and no party disputes its authenticity.  *See Martin v. Cent. States Emblems, Inc.*, 150 F. App'x 852, 857 (10th Cir. 2005).  Plaintiff has provided (1) the Discrimination Complaint she filed with the Department of Education, and (2) the Right to Sue letter issued by the Department of Education.  *See* **Doc. 23-1, Ex. A**.  The Court did not consider these documents as they were not central to the Complaint, nor did Plaintiff request that the Court convert the motion to a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d) (stating that if matters outside the pleadings are presented to and not excluded by the court, the court must treat a motion for judgment on the pleadings as a motion for summary judgment).

or state a claim for relief."). Here, because immunity has not been waived for a damages suit under the NMTCA for Plaintiff's New Mexico Constitution and common-law invasion of privacy claims, any amendment would be futile, and Counts IV and VI will be dismissed with prejudice. However, the Court cannot conclude that amendment of Plaintiff's Title IX or NMHRA claims would be futile, therefore, the Court will dismiss Counts I and V without prejudice and with leave to amend.

## CONCLUSION

For the reasons stated above, the Court concludes that Counts I and IV–VI of the Complaint fail to state a plausible claim for relief. **IT IS THEREFORE ORDERED** that the Defendants' Motion for Partial Judgment on the Pleadings (**Doc. 21**) is hereby **GRANTED** as follows:

1. Plaintiff's Title IX Claim (Count I) is **DISMISSED WITH PREJUDICE** as to **Defendants Trujillo and Flores**;

2. Plaintiff's Title IX Claim (Count I) against Defendants PISD and Pecos High School is **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**;

3. Plaintiff's New Mexico Constitution Claim (Count IV) is **DISMISSED WITH PREJUDICE**;

4. Plaintiff's New Mexico Human Rights Act Claim (Count V) is **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and

5. Plaintiff's State Law Tort Claim for Invasion of Privacy (Count VI) is **DISMISSED WITH PREJUDICE**.

Plaintiff may file an amended complaint within **thirty (30) days** of the entry of this order. Defendants will have **twenty-one (21) days** to respond should Plaintiff file an amended complaint.

**IT IS SO ORDERED**.

_____
**KEA W. RIGGS
UNITED STATES DISTRICT JUDGE**