# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

DE ANZA ANGEL DIMAS,

      Plaintiff,

vs.                                  No. 1:21-cv-00978-KWR-JFR

PECOS INDEPENDENT SCHOOL DISTRICT BOARD OF EDUCATION;
PECOS HIGH SCHOOL; MICHAEL FLORES, _in his individual capacity_; and
FRED TRUJILLO, Superintendent, _in his individual and official capacity_,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court upon Defendants' Joint Motion for Summary Judgment on Plaintiff's Federal Claims on the Basis of Qualified Immunity and Other Grounds (**Doc. 29**), filed February 25, 2022.  Having reviewed the pleadings and the relevant law, the Court finds that the motion is **WELL TAKEN**, and therefore, is **GRANTED IN PART AND DENIED IN PART AS MOOT**.

## BACKGROUND

This case is a civil rights suit arising from Plaintiff De Anza Dimas' claims that she faced discriminatory treatment while a high school student because of her sexual orientation.  Plaintiff brings claims against Defendant Michael Flores, Athletic Coordinator for Pecos High School, Defendant Fred Trujillo, Superintendent of the Pecos Independent School District ("PISD"), and Defendants PISD Board of Education and Pecos High School.  Plaintiff alleged the following:

Count I:        Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 _et seq._; against all Defendants

Count II:       Violation of 42 U.S.C. § 1983 for Deprivation of Procedural and Substantive Due Process and Equal Protection; against all Defendants

Count III:  Violation of 42 U.S.C. § 1983 for Failure to Train and Supervise as to Discriminatory Enforcement of School Policy; against Pecos Independent School District Board of Education and Fred Trujillo

Count IV:  Violation of the New Mexico Constitution Art. II, § 18; against all Defendants

Count V:  Violation of the New Mexico Human Rights Act, NMSA § 28-1-7; against all Defendants

Count VI:  State Law Tort Claim for Invasion of Privacy; against all Defendants

Defendants filed the instant motion seeking summary judgment on Plaintiff's federal claims, Counts I, II, and III.  *See* **Doc. 29**.  However, Defendants previously filed a motion for judgment on the pleadings, and in relevant part, sought dismissal as to Count I.  *See* **Doc. 21**.  This Court granted that motion, but permitted Plaintiff leave to amend Count I.  *See* **Doc. 35**.  Accordingly, with respect to the instant motion for summary judgment as to Count I, the motion is **DENIED AS MOOT**.  Thus, this Memorandum addresses Defendants' motion for summary judgment only on Counts II and III.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it could have an effect on the outcome of the suit.  *See Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).  "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Id.*  (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Shapolia v. Los Alamos Nat. Lab'y*, 992 F.2d 1033, 1036 (10th Cir. 1993).  Once the moving party meets its initial burden, the non-movant cannot "rest on the pleadings[,] but must set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits

to support the claim." *See Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and the moving party will be entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

On summary judgment, a court is to view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). A court cannot weigh the evidence and determine the truth of the matter, but instead, must determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## UNDISPUTED MATERIAL FACTS[1]

During the 2018-19 academic year, Plaintiff Dimas was a Pecos High School senior student and girls' basketball player. *See* **Undisputed Material Fact ("UMF") 1, Doc. 29, at 3**. Defendant Flores was employed as the PISD athletic coordinator and Defendant Trujillo was the PISD Superintendent. *See* **UMF 5–6**.

PISD had an "unwritten rule" that precluded students involved in romantic relationships from sitting together in the same bus seat on athletic trips. *See* **UMF 2**. School administrators understood this rule as being in place to allow "proper supervision" of students and "minimize any inappropriate conduct [between students] on school athletic trips." *See* **Doc. 29-1, Ex. A, ¶ 7; Doc. 29-2, Ex. B, ¶ 6**. Defendant Flores, as an athletic coordinator, did not "create or establish

---

[1] The Court has determined the relevant facts based on the parties' submissions, while omitting extraneous detail, party arguments, and facts not supported by the record. Defendants' presentation of material facts is largely undisputed. To the extent Plaintiff objected to some facts, the Court finds that nearly all of Plaintiff's objections are either conclusory or unsupported by the record, and where Plaintiff's assertions do not "specifically controvert[]" Defendants' asserted fact, the Court deems the fact admitted. D.N.M.LR–Civ. 56.1(b). Disputes concerning the facts are noted where relevant.

policies for PISD." **UMF 21**.  Defendant Trujillo, as the Superintendent of PISD, "did not create or establish policies for PISD, but only followed PISD Board of Education policies." **UMF 22**.

On January 4, 2019, the Pecos High School cheerleaders and girls' varsity basketball team were scheduled to depart the school grounds to attend a basketball tournament in Pojoaque, New Mexico.  *See* **UMF 7**.  The cheerleading coach, Jessica Flores, the assistant girls' basketball coach, Mathew Stout, and Defendant Flores were also to attend the trip.  **UMF 8**.

Before departure, Defendant Flores observed Plaintiff and her then same-sex girlfriend, T.H., also a member of the girls' basketball team, sitting together on the bus.  **UMF 9**.  Flores was aware that the two students were in a relationship.  **UMF 10**.  Flores told the two: "I need to see you two—come with me."  **UMF 11**.  Defendant Flores, Plaintiff, and T.H. exited the bus, and Flores then asked Plaintiff and T.H. to accompany him to the Pecos High School gym.  *See* **UMF 12**; **Doc. 29-1, Ex. A, ¶ 14**.  Flores asked the students to follow him to the gym "so they would not be in the company or vicinity of other Pecos High School students who were on the bus." **UMF 12**.  Flores also asked coaches Stout and Flores to accompany him.  *See* **UMF 13**; **Doc. 29-4, Ex. D**.

In the lobby of the high school gym, Defendant Flores began to question Plaintiff and T.H. *See* **UMF 13**.  Flores recorded the conversation, which is about 40 seconds long.  *See* **UMF 13**; **Doc. 38-3, Ex. 3**.  Flores first asked whether Plaintiff and T.H. were a couple, and one of the students[2] answered "yes."  **Doc. 38-3, Ex. 3, 0:09–0:12**.  Flores then asked whether it was appropriate for the two students to sit together on the bus.  *Id.* **at 0:13–0:17**.  This inquiry was met with silence.[3]  *Id.*  Flores then told the two, "we would have to [do this] with anybody else, so you

---

[2] The evidence conflicts on which student answered "yes."  *Compare* **Doc. 29-5, Ex. E** (stating that T.H. answered "yes") *with* **Doc. 29-4, Ex. D** (stating that Plaintiff answered "yes").

[3] Defendants assert that Plaintiff answered "no," *see* **UMF 14**, however, this is contradicted by the audio recording where it does not appear that the students provided a verbal response.  *See* **Doc. 38-3, Ex. 3, 0:13–0:17**.

guys cannot sit together on the bus." *Id.* **at 0:18–0:22**.  Flores asked for acknowledgment and Plaintiff stated "okay."  *Id.*; **Doc. 29-5, Ex. E**.  Flores told Plaintiff and T.H. that they were "not in trouble," but that they needed to sit separately on the bus.  *See* **UMF 18**.  Flores concluded by telling Plaintiff and T.H., "we wouldn't allow it any other way, so you guys can't do it either." **Doc. 38-3, Ex. 3, 0:25–0:32**.  Plaintiff stated "okay."  *Id.*; **Doc. 29-5, Ex. E**; **Doc. 29-4, Ex. D**. Plaintiff, T.H., and Defendant Flores and the two coaches returned to the bus, and the entire team and staff traveled to the tournament.  *See* **UMF 19**.

Afterwards, Defendant Flores provided a written statement of the events of January 4, 2019 to Defendant Trujillo.  *See* **UMF 20**.  Plaintiff also submitted an undated "To Whom It May Concern" letter to PISD.  *See* **UMF 27**.  In the letter, Plaintiff alleged that she was discriminated against when she was "ordered" off the bus by Defendant Flores and taken to the high school gym "because boys and girls from different teams can walk around and hold hands and nothing is said about it, but when two girls sit next to each other it is considered inappropriate."  *Id.*  Plaintiff expressed that she felt "threatened because of [her] sexual orientation."  *See* **Doc. 29-5, Ex. E**.

On January 9, 2019, Defendant Trujillo responded to Plaintiff's letter.  *See* **UMF 28**.  In his letter, Trujillo stated that PISD procedures prohibited couples from sitting together when traveling, that these procedures applied to all sports and "allow[ed] for proper supervision and to minimize any inappropriate conduct."  *Id.*  Trujillo explained that "[b]ecause of the possibility of a boyfriend-girlfriend, girlfriend-girlfriend, boyfriend-boyfriend traveling together on a bus to a school sponsored event, [i]t is the district's procedure to not allow the couples to sit together."  *See* **Doc. 29-6, Ex. F**.  Trujillo concluded by stating that PISD "does not and did not discriminate in any manner," and that he and the school district were "supportive of any healthy relationship regardless of sexual orientation."  *See* **UMF 28**.

In March of 2019, Plaintiff completed her season as a member of the Pecos High School girls' basketball team.  *See* **UMF 24**.  After the conclusion of the basketball season, Plaintiff began playing as a member of the Pecos High School girls' softball team.  *See* **UMF 25**.  Plaintiff graduated from Pecos High School in May 2019.  *See* **UMF 26**.

Plaintiff adds the following fact: The impact of Defendants' conduct on Plaintiff's well-being was severe.  *See* **Doc. 38-2, Ex. 2**.  The remaining two "genuinely disputed material facts"[4] advanced by Plaintiff are not supported by any evidence or citation to the record, and consist of conclusory allegations.  Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record.").

## DISCUSSION

Defendants Flores and Trujillo (the "Individual Defendants") first contend that they are entitled to summary judgment on Plaintiff's constitutional claims based on qualified immunity.  *See* **Doc. 29, at 12–13**.  Second, Defendants argue that summary judgment must be granted on Plaintiff's 42 U.S.C. § 1983 claims against Defendants PISD and Trujillo because they cannot be held liable for any alleged constitutional or statutory violation under a theory of vicarious liability.  *Id.* **at 13–14**.  Finally, Defendants argue that Defendant Pecos High School cannot be sued under NMSA § 22-5-4(E).  *Id.* **at 18**.  Plaintiff asserts that there are disputed material facts which preclude the grant of summary judgment and seeks additional discovery.  *See* **Doc. 38, at 6–7**.

---

[4] Plaintiff also presents new facts to rebut Defendants' undisputed facts.  *See* **Doc. 38, at 3–5**.  These include that: (1) on January 9, 2019, Plaintiff and her mother, along with Defendant Trujillo, Flores, and the principal of Pecos High School, Jessica Gutierrez, participated in a conversation about the purportedly discriminatory enforcement of the bus seating policy; (2) a softball coach spoke to Plaintiff on two occasions about the enforcement of the bus seating policy; and (3) an assistant basketball coach also communicated with Plaintiff about enforcement of the policy.  The Court finds that these facts are also unsupported by any evidence.

As explained below, the Court finds that the claims against Pecos High School shall be dismissed with prejudice, and Defendants are entitled to summary judgment on Counts II and III. Separately, Plaintiff has failed to show that she is entitled to additional discovery.

## I.   **Whether Defendant Pecos High School has the Capacity to be Sued.**

Defendants assert that under N.M. Stat. Ann. § 22-5-4(E), "only a local public school board has the capacity to be sued and that a high school falling under the control and direction of the local school board is not included in this statute." *See* **Doc. 43, at 7**; **Doc. 29, at 18–19**.  Plaintiff asserts that the claims against Pecos High School are proper because discovery may show that "other individual actors or employees of Pecos High School acted or failed to act," thus, Pecos High School must remain a party until the "involvement of Defendant PISD can be ascertained." *See* **Doc. 38, at 20**.

Plaintiff provides no legal authority to support her position that she may maintain a suit against Pecos High School.  N.M. Stat. Ann. § 22-5-4 enumerates the powers and duties of local school boards.  New Mexico law provides that a local school board shall "have the capacity to sue and be sued." *Id.* § 22-5-4(E).  A "local school board" is the "policy-setting body of a school district." *Id.* § 22-1-2(H).  A school district is a "political subdivision of the state for the administration of public schools," *id.* § 22-1-2(R), and a public school is a "part of a school district." *Id.* § 22-1-2(L).  The New Mexico Constitution contemplates that "a party may sue either the school district *or* the district's board." *See Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1198 (D.N.M. 2013) (emphasis in original).  Accordingly, the Court agrees that Defendant Pecos High School is not a proper party. *See, e.g.*, *Jump v. Springer Mun. Sch.*, No. CV 13-289 KG/KK, 2015 WL 13651163, at *2 (D.N.M. Oct. 14, 2015) (dismissing claims against Forrester Elementary School because the local school board, not the elementary school, was a proper party).

The Court will, therefore, dismiss Plaintiff's claims against Defendant Pecos High School with prejudice.

**II.**     **Whether Defendants Flores and Trujillo are Entitled to Qualified Immunity.**

The Individual Defendants have asserted the defense of qualified immunity, which shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff bears a heavy two-fold burden. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001); *Romero v. Story*, 672 F.3d 880, 884 (10th Cir. 2012). The plaintiff must put forward evidence showing that (1) "the defendant's actions violated a constitutional or statutory right," and (2) "the right at issue was clearly established at the time of the defendant's unlawful conduct." *See Medina*, 252 F.3d at 1128 (internal quotations omitted); *Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Medina*, 252 F.3d at 1128. In determining whether the plaintiff meets this burden, the Court ordinarily accepts the plaintiff's version of the facts—"that is, the facts alleged." *See Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018) (internal quotations omitted). However, at the summary judgment phase of the litigation, "the plaintiff's version of the facts must find support in the record." *Id.* (internal quotations omitted). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and

that he or she is entitled to judgment as a matter of law." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000) (internal quotations omitted).

### A. The Individual Defendants are Entitled to Qualified Immunity on Plaintiff's Fourteenth Amendment Due Process Claims (Count II).

Plaintiff's 42 U.S.C. § 1983 claims arise out of alleged Fourteenth Amendment violations of due process and equal protection.  Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  The Court begins with Plaintiff's Fourteenth Amendment Due Process claims.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  Due process encompasses both a procedural and substantive component.  *See Browder v. City of Albuquerque*, 787 F.3d 1076, 1078 (10th Cir. 2015); *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998). Procedural due process protects against wrongful deprivations of life, liberty, or property by requiring that the state follow certain procedures before the deprivation of a protected interest.  *See Browder*, 787 F.3d at 1078.  To determine whether an individual's procedural due process rights were violated, the Court must engage in a two-step inquiry: "(1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?"  *Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir. 1999); *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006).  "[O]rdinarily one who has a protected property interest is entitled to some sort of hearing before the government acts to impair that interest."  *Camuglia*, 448 F.3d at 1219.

Substantive due process, on the other hand, "bars certain government actions regardless of the fairness of the procedures used to implement them."  *Brown v. Montoya*, 662 F.3d 1152, 1172

9

(10th Cir. 2011) (internal quotations omitted).  "Any substantive due process claim must represent more than an ordinary tort to be actionable under § 1983, and must shock the conscience." *Clark*, 168 F.3d at 1190 (internal quotations and citations omitted).  To show a defendant's conduct is conscience-shocking, the plaintiff "must prove a government actor abused his or her authority or employed it as an instrument of oppression in a manner that shocks the conscience." *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 750 (10th Cir. 2013) (internal quotations and alterations omitted).  "To reach that level, the government action must be deliberate, rather than merely negligent." *Clark*, 168 F.3d at 1190.  "Even most intentionally inflicted injuries caused by misuse of government authority will not meet this standard."  *Koessel*, 717 F.3d at 750. "Substantive due process prohibits only the most egregious official conduct."  *Id.* (internal quotations omitted).

Plaintiff argues that Defendants violated her right to procedural due process "when they refused to allow her [to] participate in school activities, on an equal basis, without first providing her" with due process.  *See* **Doc. 1-2, Ex. A**, **¶¶ 43–44**.  Defendants contend that there is no evidence Plaintiff was denied due process because "there was no refusal to allow Plaintiff to participate in school activities," and "Plaintiff completed the girls' basketball season as a member of the team; that she participated after that in the girls' softball program; and was otherwise not denied participation in, or the benefits of, public school programs."  *See* **Doc. 29, at 13** (internal quotations omitted).

Here, after considering whether, viewed in the light most favorable to Plaintiff, Defendants' conduct violated Plaintiff's procedural due process rights, the Court concludes Plaintiff has failed to show the deprivation or impairment of a protected interest.[5]  Plaintiff's

---

[5] A student's entitlement to a public education as a property interest is constitutionally protected, however, "[p]articipation in interscholastic athletics is not a constitutionally protected civil right."  *Albach v. Odle*, 531 F.2d

allegation that Defendant Flores "refused to allow her to return to the bus or participate in the basketball tournament unless she disclosed her sexual orientation and agreed to find a different seat away from her same-sex girlfriend," *see* **Doc. 38, at 12**, is unsupported by the record.  Flores confirmed that the two students were in a relationship and asked the two students to find different seats.  *See* **Doc. 38-3, Ex. 3** (audio recording).  Plaintiff concedes, and the evidence supports, that she then attended the basketball tournament without issue, she continued to play basketball and softball through the conclusion of the Pecos High School sports season, and she graduated from Pecos High School in May 2019.  In sum, no reasonable jury could find that Plaintiff was denied participation in Pecos High School extracurricular sports or academic activities.

Plaintiff also argues that the individual Defendants violated her substantive due process rights by treating her "differently on the basis of her gender and sexual orientation with no legitimate…rationale."  *See* **Doc. 1-2, Ex. A**, **℗ 45**.  Plaintiff's substantive due process claim appears to be an equal protection claim, which the Court will address below.  However, assuming Plaintiff plausibly asserted a substantive due process allegation, like Plaintiff's procedural due process claim, Plaintiff has failed to show a deprivation of a protected interest—Plaintiff was not denied participation in sports or academics—or any action that shocks the conscience.  Thus, Plaintiff's Fourteenth Amendment substantive and procedural due process claims fail.  Because Plaintiff has failed to carry her burden to show that Defendants Flores and Trujillo violated her constitutional rights, Plaintiff has failed to satisfy the first part of the qualified immunity standard.  Accordingly, Defendants Trujillo and Flores are entitled to qualified immunity on the Fourteenth Amendment Due Process claims.

---

983, 984–85 (10th Cir. 1976).  Nevertheless, the appropriate question is "not whether the plaintiffs have an absolute right to participate in interscholastic athletics, but whether the plaintiff can be denied the benefits of activities provided by the state for [heterosexual] students."  *See, e.g.*, *Gilpin v. Kansas State High Sch. Activities Ass'n, Inc.*, 377 F. Supp. 1233, 1241 (D. Kan. 1973) (quoting *Brenden v. Indep. Sch. Dist. 742*, 477 F.2d 1292, 1297 (8th Cir. 1973)).

**B. The Individual Defendants are Entitled to Qualified Immunity on Plaintiff's Fourteenth Amendment Equal Protection Claims (Count II).**

The crux of Plaintiff's response rests with her equal protection claim.  Plaintiff alleges that Defendants deprived her of equal protection of the law when she was treated "differently on the basis of her sex and sexual orientation."  *See* **Doc. 1-2, Ex. A, ⁋ 42.**

The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike, and is intended to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1196 (10th Cir. 2019) (internal quotations and citations omitted).

Generally, equal protection claims are analyzed in two steps.  First, the Court must determine whether the challenged action intentionally discriminates between groups.  *See Washington v. Davis*, 426 U.S. 229, 240 (1976).  If any intentional discrimination is identified, the Court must consider whether the different treatment is justified.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–42 (1985).  "Different types of equal protection claims call for different forms of review. A claim that a state actor discriminated on the basis of a suspect (e.g., race), quasi-suspect (e.g., gender), or a non-suspect classification calls for strict, intermediate, or rational basis scrutiny, respectively."  *Brown*, 662 F.3d at 1172.  "But in each instance, to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them."  *Id.* (internal quotations omitted); *see also Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) ("One who alleges such an equal

protection violation has the burden of proving the existence of purposeful discrimination causing an adverse effect.").

Intentional discrimination requires discriminatory intent. "A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent." *Watson v. City of Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988). Discriminatory intent exists only if a defendant took the challenged action at least partly "'because of,' not merely 'in spite of,' [the] adverse effects upon an identifiable group." *See Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977). "Discriminatory intent can be proved directly or circumstantially." *See Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021). "Direct proof is showing that a distinction between groups of persons appears on the face of a state law or action. Circumstantial proof is showing that the plaintiff was treated differently from similarly situated persons who are alike in all relevant respects." *Id.* (internal quotations and citations omitted).

The parties do not dispute that the prohibition against discrimination on the basis of gender is "well established." *See* **Doc. 38, at 14–15**; **Doc. 43, at 5–6**. Plaintiff argues that Defendants' enforcement of the bus seating rule was "selective and arbitrary" and only targeted LGBTQ+ students, that there was no rational basis for enforcing the policy against Plaintiff and her same-sex partner, and that Defendants can present no evidence suggesting that they ever enforced the policy against heterosexual students. *See* **Doc. 38, at 13**. Defendants dispute that the alleged conduct violated Plaintiff's right to equal protection and argue that they followed the "'bus seating rule' applicable to school athletic bus trips that applied to all dating couples, regardless of sexual orientation, [and] which rested on legitimate pedagogical considerations," such as preventing students from engaging in inappropriate conduct. *See* **Doc. 29, at 13**.

Here, the Court concludes Plaintiff has failed to satisfy her burden on the first prong[6] of the qualified immunity standard.  Plaintiff has not presented evidence, beyond her allegations, that she was treated differently than other Pecos High School athletes on school sponsored trips or similarly situated individuals, or even inferring such differential treatment, that Defendants Trujillo or Flores' conduct was motivated by a discriminatory purpose.  To note, Plaintiff has not referenced any conduct, statements, or correspondence that suggests Trujillo or Flores had a discriminatory animus in enforcing the concededly facially neutral bus rule.  Plaintiff has also failed to present evidence, beyond her allegations, that the unwritten rule had a disparate impact among LGBTQ+ students compared to heterosexual students.  Because Plaintiff has failed to carry her burden to show that the Individual Defendants violated her constitutional rights, Defendants Trujillo and Flores are entitled to qualified immunity on the Fourteenth Amendment Equal Protection claims.

### III.     Whether Summary Judgment is Appropriate as to Plaintiff's § 1983 Claims against Trujillo and PISD Board of Education (Count III).

Plaintiff asserts that Defendant PISD and Trujillo are liable for violating her constitutional rights by failing to take action after Defendant Flores' improper conduct, by ratifying the unwritten bus separation policy, and by failing to intervene or discipline Flores.  *See* **Doc. 1-2, Ex. A, ¶ 53– 54**.  The Court awards summary judgment as to Defendants PISD and Trujillo.

---

[6] In some cases, when the qualified immunity inquiry turns on a subjective element, the burden shifts to the defendant to make a showing of "objective reasonableness."  *See Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991); *see also Jicarilla Apache Nation v. Rio Arriba Cnty.*, 376 F. Supp. 2d 1096, 1102 (D.N.M. 2004), *aff'd*, 440 F.3d 1202 (10th Cir. 2006); *Kelley v. City of Albuquerque*, 375 F. Supp. 2d 1183, 1203 (D.N.M. 2004), *aff'd*, 542 F.3d 802 (10th Cir. 2008).  Neither party raised this standard, however, thus the Court considers any such argument waived.

**A.  The Court Grants Summary Judgment on the *Monell* Claim against PISD.**

Under *Monell v. Department of Social Services*, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory or solely because it employs a tortfeasor.  436 U.S. 658, 694 (1978); *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 36 (2010).  "Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged."  *Jensen v. W. Jordan City*, 968 F.3d 1187, 1204 (10th Cir. 2020) (quoting *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)).  "In addition, a municipality may not be held liable where there was no underlying constitutional violation by any of its officers."  *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).

Plaintiff alleges that Defendant PISD is liable under *Monell* because PISD

(a) enforced the unwritten rule prohibiting dating couples [from sitting] together on buses against same-sex couples and did not enforce [it] against opposite-sex couples, and (b) failed to adequately train and supervise…Defendant Flores [to] protect Dimas's constitutional right to equal protection of the laws, and (c) had an official policy, custom, or practice that was deliberately indifferent to Plaintiff Dimas's Constitutional rights.

*See* **Doc. 1-2, Ex. A**, **¶¶ 46**, **54**.

Defendants first contend that Plaintiff has failed to show the existence of an unconstitutional or illegal policy because the bus seating rule "applied to all dating athletes regardless of sexual orientation."  *See* **Doc. 29, at 14**.  Defendants also contend that Plaintiff has failed to show the existence of a custom or practice because the events of January 4, 2019 were a "isolated and solitary incident."  *Id.* **at 15**.

Plaintiff's response largely fails to substantively address Defendants' arguments and Plaintiff does not create any real factual disputes.  *See* **Doc. 38, at 16–18**.  Accordingly, summary judgment is appropriate if Defendants have met their initial burden of production.  *See Reed v.*

*Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).  However, "[i]f the evidence produced in support of the summary judgment motion does not meet this burden, summary judgment must be denied *even if no opposing evidentiary matter is presented*."  *Id.* (internal quotations omitted) (emphasis in original).

A school board can incur liability for its employees' constitutional torts only if those torts resulted from a municipal policy or custom.  *See Murphy v. City of Tulsa*, 950 F.3d 641, 644 (10th Cir. 2019).  Five potential sources exist for a municipal policy or custom: (1) "a formal regulation or policy statement," (2) "an informal custom amounting to a widespread practice that, although not authorized by a written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law," (3) "the decision of a municipal employee with final policymaking authority," (4) "a policymaker's ratification of a subordinate employee's action," and (5) "a failure to train or supervise employees."  *Id.* (internal quotations omitted); *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019).  "With informal, unwritten policies, customs, or practices, the plaintiff can plead either a pattern of multiple similar instances of misconduct…or use other evidence, such as [] statements attesting to the policy's existence."  *See Ward v. City of Hobbs*, 398 F. Supp. 3d 991, 1039 (D.N.M. 2019).

Plaintiff's first theory of liability is that PISD had an official custom or policy of prohibiting same-sex couples from sitting together on the bus.  *See* **Doc. 1-2, Ex. A, ⁋ 46**.  Here, it is undisputed that PISD had a policy, though unwritten, of separating students who were in dating relationships on buses bound for athletic or school-sponsored trips.  *See* **Doc. 29-1, Ex. A, ¶ 5**; **Doc. 29-2, Ex. B, ¶ 4**.  Plaintiff concedes that the policy is "facially neutral," *see* **Doc. 38, at 18**, but maintains that the policy was selectively enforced and had a disparate impact on LGBTQ+[7]

_____

[7] "LGBTQ+" is an acronym that stands for lesbian, gay, bisexual, transgender, queer (or sometimes, questioning), and others.

students.  *Id.*  Based on the evidence presented, the Court finds that Plaintiff has not met her burden of demonstrating the existence of policy, practice, or custom of separating students on the basis of sexual orientation or only separating LGBTQ+ students.

Viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences, the existing record can only support one instance where Plaintiff was separated from her same-sex partner on the bus before an athletic trip.  Plaintiff's failure to point to evidence of the existence of similar discrimination as to others "seriously undermines her claim that [Defendant] maintained a custom" of discriminatory bus-seating practices.  *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995).  Plaintiff has not pointed to statistics, evidence or records of similar treatment occurring to others, or even anecdotal evidence that would indicate that the separation of LGBTQ+ couples was more than an isolated incident.  *See Young v. City of Albuquerque*, 77 F. Supp. 3d 1154, 1187 (D.N.M. 2014).  In such a case, one instance of separation of LGBTQ+ students is insufficient, as a matter of law, to show a widespread or pervasive custom or practice.  *Id.*  ("A single incident is insufficient to establish the existence of a custom or practice.").  Thus, Plaintiff has failed to establish a genuine dispute of material fact that Defendants had a custom or practice of only separating LGBTQ+ students or couples.

Plaintiff's second theory is that PISD is liable under *Monell* because it failed to adequately train and supervise Defendant Flores.  *See* **Doc. 1-2, Ex. A, ⁋ 46**.  Allegations of failure to supervise and failure to train are treated "the same way."  *See Whitewater v. Goss*, 192 F. App'x 794, 797 (10th Cir. 2006).  In "limited circumstances," a failure to train can be the basis for liability under § 1983.  *See City of Canton v. Harris*, 489 U.S. 378, 387 (1989).  But "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Only when a municipality's failure to train

or supervise employees evidences a "deliberate indifference to the rights of its inhabitants" that this failure to train or supervise can be considered a "policy or custom that is actionable under § 1983." *See City of Canton*, 489 U.S. at 389 (internal quotations omitted).

Deliberate indifference requires a showing that the municipality had "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *See Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). Notice can be established by "proving the existence of a pattern of tortious conduct." *Id.* Absent a pattern of unconstitutional behavior, deliberate indifference may be found if a violation of federal rights is a "highly predictable or plainly obvious consequence of a municipality's action or inaction." *Id.* at 1307–08.

PISD can only be liable for a failure to train or supervise if Plaintiff can show that PISD had actual or constructive notice that its particular training or supervision programs cause school employees to violate students' constitutional rights. Here, Plaintiff has not identified any specific training or supervision that is allegedly inadequate. Further, beyond the January 4, 2019 incident, Plaintiff has not identified any evidence that suggests that there was a pattern of similar constitutional violations related to training or supervision nor facts that would indicate that the allegedly improper separation from her same sex partner on the bus was a "highly predictable" or "plainly obvious" consequence of the alleged failure to train or supervise such that PISD could be held liable. In other words, summary judgment is appropriate as to PISD because Plaintiff failed to provide proof or raise a genuine dispute of material fact on an essential element—the existence of a policy or custom of separating students on the basis of sexual orientation, or deliberate indifference.[8]

---

[8] Plaintiff's *Monell* claims against Defendant PISD would also fail because she failed to show an underlying constitutional violation by any PISD employee. *See Graves*, 450 F.3d at 1218.

**B.  The Court Grants Summary Judgment on the § 1983 Claim against Trujillo.**

Plaintiff alleges that Defendant Trujillo, in his individual capacity, "ratified and continued to enforce" the discriminatory actions of Defendant Flores, and that Defendant Trujillo "failed or refused to take action" after Plaintiff informed school officials about the January incident.  *See* **Doc. 1-2, Ex. A,  ¶¶ 53, 55**.  Plaintiff maintains that the policy and "related enforcement practices" were unconstitutional because they disparately affected LGBTQ+ students.  *Id.*  **¶ 56**.  In response, Defendants contend that Plaintiff has failed to show (1) the existence of an unconstitutional policy and (2) the existence of a custom or practice, or (3) that Trujillo is a final policymaker for the school district such that he may be held liable for a policy he did not create.  *See* **Doc. 29, at 14– 15**.

"A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability."  *Brown*, 662 F.3d at 1163.  "Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Id.* (internal quotations omitted).  "Supervisory liability allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, or implements a policy which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution."  *Id.* (internal quotations and alterations omitted).

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Where a plaintiff alleges a § 1983 action against a government agent in their individual-capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.*  To put it simply, personal liability under § 1983 "must be based on [a defendant's] personal involvement" in a constitutional violation, "and supervisory liability must be based on [a defendant's] Policy."  *Brown*, 662 F.3d at 1164–65.  Thus,

Plaintiff must show an "affirmative link" between Defendant Trujillo and the constitutional violations through the following elements: (1) personal involvement; (2) causation, and (3) state of mind. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013); *Keith v. Koerner*, 843 F.3d 833, 837 (10th Cir. 2016).

As the Court has previously determined, Plaintiff has not demonstrated that the Individual Defendants have violated her Fourteenth Amendment due process or equal protection rights. Therefore, Defendant Trujillo is entitled to judgment as a matter of law on Plaintiff's individual and supervisory liability claims. *See Doe v. Woodard*, 912 F.3d 1278, 1290 (10th Cir. 2019) ("Supervisors cannot be liable under § 1983 where there is no underlying violation of a constitutional right by a supervisee.").

## IV. <u>Whether Plaintiff is Entitled to Additional Discovery.</u>

Plaintiff asks that the Court deny Defendants' motion or defer a ruling so that Plaintiff may conduct discovery. *See* **Doc. 38, at 6–7**. Defendant argues that Plaintiff failed to comply with Rule 56(d) of the Federal Rules of Civil Procedure and she "seeks to engage in expansive discovery" that is not narrowly tailored to respond to the qualified immunity defense. *See* **Doc. 43, at 7–9**. The Court agrees.

Rule 56(d) provides that if a nonmovant shows that it cannot present facts essential to justify its opposition, the Court may: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Normally, a Rule 56(d) request is treated liberally. *See Lewis*, 903 F.2d at 758. However, where a summary judgment motion is grounded in the defense of qualified immunity, the Court's otherwise broad discretion under Rule 56(d) is circumscribed. *Id.* "Because the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims

against government officials will be resolved *prior to discovery*, there is a strong policy justification for staying discovery and for refusing requests for additional discovery once a defendant invokes qualified immunity as a defense." *Martin v. Cnty. of Santa Fe*, 626 F. App'x 736, 740 (10th Cir. 2015) (internal quotations and citations omitted).

A party requesting additional discovery under Rule 56(d) "must specify (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015) (internal quotations and alteration omitted).  In the qualified immunity context, the plaintiff is required to demonstrate through a Rule 56(d) affidavit "how discovery will raise a genuine fact issue as to [the defendant's] qualified immunity claim." *Lewis*, 903 F.2d at 758.

Plaintiff served discovery interrogatories, requests for production, and requests for admission upon Defendant Flores alone on March 14, 2022.  *See* **Doc. 41-1, Ex. A**.   Plaintiff characterizes the discovery sought as follows:

> (1) Personal motivation for Defendants' actions and omissions, in deposition form, directed toward questions of discriminatory anim[u]s and history of personal beliefs and anim[u]s concerning LGBTQ+ student, and diversity policy generally;
>
> (2) Questions surrounding evidence, in audio or video recording form, of an audio or video recording made by Defendants' on or about January 9, 2019, between the parties in the principal's office, which was either lost, spoiled, or non-existent in the first place (it is unclear which);
>
> (3) Chain of command issues, and who specifically directed Defendant Flores's initial enforcement of the unwritten school bus separation policy, and the official or unofficial rationale on why such an unwritten policy was required, in the first place[.] Additionally, whether Defendant PISD continued to direct either Defendant Flores or Trujillo to enforce the policy, up until official abandonment on August 30, 2019, or whether continued enforcement and monitoring of Plaintiff was done at the personal discretion of individual Defendants or other as-of-yet undiscovered witnesses or additional Defendants; and

(4) Responses to Interrogatories directed toward other instances of enforcement of the unwritten policy against both non- LGBTQ+ identified and LGBTQ+ identified students, going to the heart of the question of selective enforcement and unequal treatment.

**Doc. 38, at 6–7**.

Here, first, by filing a responsive brief to Defendants' motion for summary judgment, Plaintiff waived her right to seek additional discovery. *See, e.g.*, *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 833 (10th Cir. 1986) ("The protection afforded by Rule 56([d] is an *alternative* to a response in opposition to summary judgment under 56[c]."); *Villa v. Bd. of Cnty. Comm'rs of Cnty. of Arapahoe*, 931 F.2d 900 (10th Cir. 1991) ("Rule 56[d] may be used only as an alternative to the filing of a brief and answer under Rule 56[c]. And when, as here, a party has responded to a summary judgment motion under Rule 56[c], that party waives any option it may have had to proceed under Rule 56[d].").

Nevertheless, Plaintiff has also failed to meet the substantive requirements of Rule 56. Notably, three of Plaintiff's requests for discovery of are not grounded upon the existence of any *specific* evidence which discovery would document and confirm, but arise from Plaintiff's belief that discovery of these matters may yield the evidence that she seeks. Plaintiff's vague, unspecific identification of what she hopes to uncover through discovery fails to provide the requisite connection between the discovery sought and the validity of the Individual Defendants' qualified immunity assertion. Rule 56 "is not a license for a fishing expedition, especially when summary judgment is urged based on a claim of qualified immunity." *Lewis*, 903 F.2d at 759.

Additionally, Plaintiff fails to explain how the existence of the alleged recording of the January 9, 2019 meeting between Plaintiff, her mother, and school officials will establish discriminatory motive or rebut Defendants' assertion of qualified immunity. Moreover, though

discriminatory intent is relevant, Plaintiff seeks discovery that is not reasonably related to this issue. For example, Plaintiff specifically requested information about

> Defendant Flores' work history for ten (10) years; past litigation history; criminal history; his personal beliefs on the bus separation policy; his personal beliefs on students dating; his personal beliefs on LGBTQ+[] students; his sexual orientation; and his interactions with LGBTQ+[] students, coaches, faculty members and administrators…[and] his personnel file, his disciplinary history, social media, text messages, transcriptions and recordings[.]

*See* **Doc. 43, at 9** (emphasis omitted); **Doc. 41-1, Ex. A**. Plaintiff's discovery is not narrowly tailored to overcoming the qualified immunity defense or creating a genuine dispute of fact as to matters that are material to the defense. Plaintiff also fails to assert steps taken to obtain discovery other than the discovery served on Flores. To permit Plaintiff's requested discovery would render the Individual Defendants' qualified immunity defense a nullity. Thus, the Court finds the extent of the proposed discovery is neither warranted, reasonable, nor within the boundaries allowed once a qualified immunity defense has been raised, and accordingly, Plaintiff's request is **DENIED**.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Partial Summary Judgment (**Doc. 29**) is **GRANTED IN PART** with respect to Count II for Defendants Trujillo and Flores, and Count III for Defendants PISD Board of Education and Trujillo.

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment (**Doc. 29**) is **DENIED AS MOOT** with respect to Count I.

**IT IS FURTHER ORDERED** that Plaintiff's request for additional discovery (**Doc. 38**) is **DENIED**.

**IT IS FINALLY ORDERED** that the claims against Defendant Pecos High School are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**