IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

_____

DE ANZA ANGEL DIMAS,

     Plaintiff,

vs.                                       1:21-cv-00978-KWR-JFR

PECOS INDEPENDENT SCHOOL DISTRICT BOARD OF EDUCATION;
PECOS HIGH SCHOOL; MICHAEL FLORES, *in his individual capacity*; and
FRED TRUJILLO, Superintendent, *in his individual and official capacity*,

     Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court upon Defendants' Joint Motion for Partial Summary Judgment on Count IV of Plaintiff's First Amended Complaint based on Qualified Immunity and Other Grounds (**Doc. 50**) and Defendant Pecos Independent School District Board of Education's Motion for Partial Summary Judgment on Plaintiff's Title IX Claim (**Doc. 53**). Having reviewed the pleadings and the relevant law, the Court finds that the motions are well taken, and therefore, are **GRANTED**.

## BACKGROUND

This case is a civil rights suit arising from Plaintiff De Anza Dimas' claims that she faced discriminatory treatment while a high school student because of her sexual orientation. Plaintiff brings claims against Defendant Michael Flores, Athletic Coordinator for Pecos High School, Defendant Fred Trujillo, Superintendent of the Pecos Independent School District ("PISD"), and

Defendants PISD Board of Education. Plaintiff asserts the following claims in her First Amended Complaint[1]:

Count I:    Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*; against all Defendants

Count II:   Violation of 42 U.S.C. § 1983 for Deprivation of Procedural and Substantive Due Process and Equal Protection; against all Defendants

Count III:  Violation of 42 U.S.C. § 1983 for Failure to Train and Supervise as to Discriminatory Enforcement of School Policy; against Pecos Independent School District Board of Education and Fred Trujillo

Count IV:   Fourteenth Amendment Substantive Due Process Claim (Invasion of Privacy under 42 U.S.C. 1983)[2] against Defendants Flores, Pecos Independent School District Board of Education, and Fred Trujillo

Defendants filed the instant motions seeking summary judgment on Plaintiff's federal claims, Counts I and Count IV. *See* Doc. 50; Doc. 53. Defendants previously filed a motion for judgment on the pleadings. *See* Doc. 21. This Court granted that motion and dismissed Count I, Count IV, Count V, and Count VI, but permitted Plaintiff leave to amend Count I and Count V. *See* Doc. 35. Defendant also previously filed a motion for summary judgment on Plaintiff's federal claims. See Doc. 29. This Court granted in part that motion with respect to Count II and Count III. Plaintiff filed a First Amended Complaint, which omitted Counts V and VI, and

---

[1] These claims differ from those asserted in the original complaint, and which the Court partially addressed in prior opinions. The First Amended Complaint omits Counts V and VI, and replaces Count IV. Previous Count IV was dismissed without leave to amend.

[2] Plaintiff asserted an invasion of privacy claim under the Fourteenth Amendment for the first time in her First Amended complaint. Defendants assert that the Court did not grant Plaintiff leave to file an amended complaint as to this claim. *See* Doc. 35 (order dismissing certain claims and granting leave to amend as to other claims); Doc. 47 (amended complaint).

replaced Count IV. Previous Count IV was dismissed without leave to amend. The memorandum will address Count I and the newly amended Count IV.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A fact is material if it could have an effect on the outcome of the suit. *See Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.* (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat. Lab'y*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its initial burden, the non-movant cannot "rest on the pleadings[,] but must set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim."  *See Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and the moving party will be entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

On summary judgment, a court is to view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). A court cannot weigh the evidence and determine the truth of the matter, but instead, must determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**UNDISPUTED MATERIAL FACTS[3]**

During the 2018-19 academic year, Plaintiff Dimas was a Pecos High School senior student and girls' basketball player. *See* Undisputed Material Fact ("UMF") 1, Doc. 50, at 4; UMF 1, Doc. 53 at 3. Defendant Flores was employed as the PISD athletic coordinator and Defendant Trujillo was the PISD Superintendent. UMF 5–6, Doc. 50 at 5; UMF 5-6, Doc. 53 at 4.

PISD had an "unwritten rule" that precluded students involved in romantic relationships from sitting together in the same bus seat on athletic trips. UMF 2, Doc. 50 at 4-5; UMF 2, Doc. 53 at 3. School administrators understood this rule as being in place to allow "proper supervision" of students and "minimize any inappropriate conduct [between students] on school athletic trips."  Doc. 50-1, Ex. A, ¶ 7; Doc. 50-2, Ex. B, ¶ 6; Doc. 53-1, Ex. A, ¶ 7; Doc. 53-1, Ex. B, ¶ 6.

On January 4, 2019, the Pecos High School cheerleaders and girls' varsity basketball team were scheduled to depart the school grounds to attend a basketball tournament in Pojoaque, New Mexico. UMF 7, Doc. 50 at 5; UMF 7, Doc. 53 at 4. The cheerleading coach, Jessica Flores, the assistant girls' basketball coach, Mathew Stout, and Defendant Flores were also to attend the trip. UMF 8, Doc. 50 at 5; UMF 8, Doc. 53 at 4.

Before departure, Defendant Flores observed Plaintiff and her then same-sex girlfriend, T.H., also a member of the girls' basketball team, sitting together on the bus. UMF 9, Doc. 50 at 5; UMF 9, Doc. 53 at 4. Flores was aware that the two students were in a relationship. UMF 10, Doc. 50 at 5; UMF 10, Doc. 53 at 4. Flores told the two: "I need to see you two—come with

---

[3] The Court has determined the relevant facts based on the parties' submissions, while omitting extraneous detail, party arguments, and facts not supported by the record. Defendant's asserted material facts are largely admitted by Plaintiff. Disputes concerning the facts are noted where relevant.

me." UMF 11, Doc. 50 at 6; UMF 11, Doc. 53 at 4. Defendant Flores, Plaintiff, and T.H. exited

the bus, and Flores then asked Plaintiff and T.H. to accompany him to the Pecos High School

gym. UMF 12, Doc. 50 at 6; UMF 12, Doc. 53 at 4-5. Flores asked the students to follow him to

the gym "so they would not be in the company or vicinity of other Pecos High School students

who were on the bus." *Id.* Flores also asked coaches Stout and Flores to accompany him. UMF

13, Doc. 50 at 6; UMF 13, Doc. 53 at 5.

        In the lobby of the high school gym, Defendant Flores began to question Plaintiff and

T.H. *Id.* Flores recorded the conversation, which is about 40 seconds long. *See* UMF 13, Doc. 50

at 6; UMF, Doc. 53 at 5; Doc. 38-3, Ex. 3. Flores first asked whether Plaintiff and T.H. were a

couple, and one of the students[4] answered "yes." Doc. 38-3, Ex. 3, 0:09–0:12. Flores then asked

whether it was appropriate for the two students to sit together on the bus. *Id.* at 0:13–0:17. This

inquiry was met with silence.[5] *Id.* Flores then told the two, "we would have to [do this] with

anybody else, so you guys cannot sit together on the bus." *Id.* at 0:18–0:22. Flores asked for

acknowledgment and Plaintiff stated "okay." *Id.*; Doc. 50-5, Ex. E. Flores told Plaintiff and T.H.

that they were "not in trouble," but that they needed to sit separately on the bus. *See* UMF 18,

Doc. 50 at 6; UMF 18, Doc. 53 at 5. Flores concluded by telling Plaintiff and T.H., "we wouldn't

allow it any other way, so you guys can't do it either." Doc. 38-3, Ex. 3, 0:25–0:32. Plaintiff

stated "okay." *Id.*; Doc. 50-5, Ex. E; Doc. 50-4, Ex. D; Doc. 53-4, Ex. D.  Plaintiff, T.H., and

Defendant Flores and the two coaches returned to the bus, and the entire team and staff traveled

to the tournament. UMF 19, Doc. 50 at 7; UMF 19, Doc. 53 at 5.

---

[4] The evidence conflicts on which student answered "yes." *Compare* Doc. 29-5, Ex. E (stating that T.H. answered "yes") *with* Doc. 29-4, Ex. D (stating that Plaintiff answered "yes').

[5] Defendants assert that Plaintiff answered "no," *see* UMF 14, however, this is contradicted by the audio recording where it does not appear that the students provided a verbal response. *See* Doc. 38-3, Ex. 3, 0:13–0:17.

Afterwards, Defendant Flores provided a written statement of the events of January 4, 2019 to Defendant Trujillo. *See* UMF 20, Doc. 50 at 7; UMF 20, Doc. 53 at 5. Plaintiff also submitted an undated "To Whom It May Concern" letter to PISD. *See* UMF 27, Doc. 50 at 8. In the letter, Plaintiff alleged that she was discriminated against when she was "ordered" off the bus by Defendant Flores and taken to the high school gym "because boys and girls from different teams can walk around and hold hands and nothing is said about it, but when two girls sit next to each other it is considered inappropriate." *Id.* Plaintiff expressed that she felt "threatened because of [her] sexual orientation." *See* Doc. 50-5, Ex. E.

On January 9, 2019, Defendant Trujillo responded to Plaintiff's letter. *See* UMF 28, Doc. 50 at 8. In his letter, Trujillo stated that PISD procedures prohibited couples from sitting together when traveling, that these procedures applied to all sports and "allow[ed] for proper supervision and to minimize any inappropriate conduct." *Id.* Trujillo explained that "[b]ecause of the possibility of a boyfriend-girlfriend, girlfriend-girlfriend, boyfriend-boyfriend traveling together on a bus to a school sponsored event, [i]t is the district's procedure to not allow the couples to sit together." *See* Doc. 50-6, Ex. F. Trujillo concluded by stating that PISD "does not and did not discriminate in any manner," and that he and the school district were "supportive of any healthy relationship regardless of sexual orientation." *See* UMF 28, Doc. 50 at 8.

In March of 2019, Plaintiff completed her season as a member of the Pecos High School girls' basketball team. UMF 24, Doc. 50 at 7; UMF 22, Doc. 53 at 6. After the conclusion of the basketball season, Plaintiff began playing as a member of the Pecos High School girls' softball team. *See* UMF 25, Doc. 50 at 7; UMF 23, Doc. 53 at 6. Plaintiff graduated from Pecos High School in May 2019. *See* UMF 26, Doc. 50 at 8; UMF 24, Doc. 53 at 6.

Plaintiff adds the following fact: The impact of Defendants' conduct on Plaintiff's well-being was severe. *See* Doc. 38-2, Ex. 2. The remaining two "genuinely disputed material facts"[6] advanced by Plaintiff are not supported by any evidence or citation to the record, and consist of conclusory allegations. Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record.").

## DISCUSSION

### I.      Count 1: Violation of Title IX of the Education Amendments of 1972

Plaintiff alleges that PISD Board of Education's bus seating policy discriminated against Plaintiff in violation of Title IX. Doc. 47 ¶ 48. Defendant argues that Plaintiff's claim is based on a solitary or isolated incident and Plaintiff was not excluded from, denied the benefits of, or subjected to discrimination. Doc. 53 at 7. Plaintiff argues that the discrimination was pervasive and severe, and that if Plaintiff had not complied, Flores would not have allowed her participation in the basketball tournament. Doc. 62 at 13-14. The Court finds that enforcement of the bus seating policy was not discriminatory. The Court further finds that Flores alleged harassment was not pervasive and Plaintiff was not denied educational benefits or opportunities. Therefore, the Court finds that no reasonable jury could conclude that PISD Board of Education violated Title IX.

### 1.   Enforcement of the Bus Seating Policy did not Discriminate Against Plaintiff

---

[6] Plaintiff also presents new facts to rebut Defendants' undisputed facts. Doc. 62 at 3-5; Doc. 63, at 3–5. These include that: (1) on January 9, 2019, Plaintiff and her mother, along with Defendant Trujillo, Flores, and the principal of Pecos High School, Jessica Gutierrez, participated in a conversation about the purportedly discriminatory enforcement of the bus seating policy; (2) a softball coach spoke to Plaintiff on two occasions about the enforcement of the bus seating policy; and (3) an assistant basketball coach also communicated with Plaintiff about enforcement of the policy. The Court finds that these facts are also unsupported by any evidence.

Title IX of the Education Amendments Act of 1972 provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). *"*Where a Title IX plaintiff relies on indirect proof of discrimination, we apply the three-part burden-shifting framework announced in *McDonnell Douglas." Doe v. Univ. of Denver, 1 F.4th 822, 829 (10th Cir. 2021); McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); *see also Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1315 n.8 (10th Cir. 2017) ("The *McDonnell Douglas* framework applies" to "Title IX sex discrimination claims."). "The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the plaintiff has his day in court despite the unavailability of direct evidence." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case for discrimination or retaliation by showing the school took adverse action against the plaintiff based on the plaintiff's sex. *Bird v. W. Valley City*, 832 F.3d 1188, 1200 (10th Cir. 2016) (sex discrimination claim); *Fye v. Oklahoma Corp. Commission*, 516 F.3d 1217, 1225 (10th Cir. 2008) (retaliation claim). The burden then shifts to the defendant "to articulate a legitimate, nondiscriminatory [or nonretaliatory] reason for the adverse action." *Bird*, 832 F.3d at 1200. If the defendant satisfies this burden, "then summary judgment is warranted unless [the plaintiff] can show there is a genuine issue of material fact as to whether the proffered reason[ ] [is] pretextual." *Id.* (quotations omitted). To prove pretext, the plaintiff "must produce evidence of weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [school's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them

unworthy of credence and hence infer that the [school] did not act for the asserted
nondiscriminatory reasons." *Doe*, 1 F.4th at 829.

To determine if the plaintiff has established a prima facie case for discrimination, the
Court must ask, "Could a reasonable jury – presented with the facts alleged – find that [sexual
orientation] was a motivating factor in the school's disciplinary decision?" *Id*. A plaintiff may
use, but is not limited to, the "erroneous outcome" and "selective enforcement" frameworks to
establish that sex was a motivating factor in the school's decision. *Id.*

"Under the "erroneous outcome" test, a plaintiff must set forth (1) facts sufficient to cast
some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) a
particularized causal connection between the flawed outcome and [sexual orientation] bias." *Id.*
at 830. "To satisfy the "selective enforcement" test, a plaintiff must show that a similarly-
situated member of the opposite [sexual orientation] was treated more favorably than the plaintiff
due to his or her [sexual orientation]." *Id.*

The Court finds that Plaintiff has not established a prima facie case for discrimination.
Plaintiff has not established that the enforcement of the bus seating policy was on the basis of
Plaintiff's sexual orientation. The policy precluded all students involved in romantic
relationships from sitting together in the same bus seat on athletic trips. UMF 2, Doc. 50 at 4-5;
UMF 2, Doc. 53 at 3. The purpose of the policy was to allow "proper supervision" of students
and to "minimize any inappropriate conduct [between students] on school athletic trips." Doc.
50-1, Ex. A, ¶ 7; Doc. 50-2, Ex. B, ¶ 6; Doc. 53-1, Ex. A, ¶ 7; Doc. 53-1, Ex. B, ¶ 6. Plaintiff
argues that the policy "resulted in a de facto discrimination and disparate enforcement and
treatment of LGBTQ+ students." Doc. 62 at 7. Plaintiff has failed to present evidence, beyond
her allegations, that the unwritten rule had a disparate impact among LGBTQ+ students

compared to heterosexual students.[7] Furthermore, "[s]tatistical disparity by itself does little to inform the factfinder of whether the school was motivated by [sexual orientation] with respect to the particular proceeding brought against the plaintiff." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1194 (10th Cir. 2020); *See also Haidak v. Univ. of Mass-Anherst.*, 933 F.3d 56, 75 (1st Cir. 2019) ("Even if one could infer from the data that another decision maker issued higher penalties based on [gender], that inference says little about whether the decision maker in this case brought to bear any bias on the basis of [gender]."); *Turner v. Public Service*, 563 F.3d 1136, 1147 (10th Cir. 2009) ("Turner's statistic regarding the gender imbalance of the ... workforce ... does not, without additional evidence, suggest that Turner herself experienced discrimination. The numbers fail to provide any information regarding whether the decision not to hire Turner, and that decision alone, involved discrimination on the basis of [gender]." (internal quotation marks omitted)). The existing record can only support one instance where Plaintiff was separated from her same-sex partner on the bus before an athletic trip. Plaintiff has not pointed to statistics, records, or even anecdotal evidence that would indicate that the separation of LGBTQ+ couples was more than an isolated incident. Viewing the facts in the light most favorable to the Plaintiff, a reasonable jury would not find that sexual orientation was a motivating factor in the school's policy enforcement. Therefore, the Court finds that Plaintiff has failed to establish a prima facie case for discrimination.

## 2.   Teacher-on-Student Discrimination

---

[7] The Court of Appeals are split on whether disparate-impact theory of liability is cognizable under Title IX. *See Fort v. Dallas Indep. Sch. Dist.*, 82 F.3d 414 (table), 1996 WL 167072 at *3 n.3 (5th Cir. 1996) (noting circuit split). The Tenth Circuit has not addressed the issue. *Doe v. Univ. of Denver*, 952 F.3d 1182, 1194 (10th Cir. 2020). However, the Tenth Circuit has held that evidence of a disparate impact may be used in analyzing the school's motivations under McDonnell Douglas framework. *Doe v. Univ. of Denver*, 1 F.4th 822, 829 (10th Cir. 2021).

A recipient of federal funds "intentionally violates Title IX, and is subject to a private damages action, where the recipient is deliberately indifferent to known acts of teacher-student discrimination." *Davis ex. rel. LaShonda D v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). Where teacher-on-student harassment or discrimination is involved, to plausibly state a Title IX claim, a plaintiff must allege: (1) the school or school district was deliberately indifferent to acts of harassment of which it has actual knowledge, (2) the harassment was reported to an appropriate person with the authority to take corrective action to end the discrimination, and (3) the harassment was so severe, pervasive and objectively offensive that it, (4) deprived the victim of access to the educational benefits or opportunities provided by the school. *See Escue v. N. OK Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006); *Karasek v. Regents of Univ. of California*, 956 F.3d 1093, 1105 (9th Cir. 2020); *see also Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170, 1177–78 (10th Cir. 2007) (holding that the actual notice or knowledge element does not apply in cases that involve official school policy).

As the Court has previously determined, the enforcement of the bus seating policy is not discriminatory, and therefore, the Court finds that Flores' enforcement of the policy is not discrimination or harassment. Furthermore, the Court finds that the alleged harassment was not so severe, pervasive and objectively offensive that it deprived Plaintiff of the educational benefits or opportunities provided from the school.

Generally, a single instance of gender-based harassment cannot, by definition, be pervasive. *See Schaefer v. Las Cruces Public School District*, 716 F. Supp. 2d 1052, 1082 (D.N.M. 2010). However, "there is no magic number of incidents required to establish a hostile environment." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007). Rather, determining whether conduct amounts to a hostile environment characterized by severe,

persistent, and objectively offensive gender-based harassment depends on a variety of factors, including the ages of the alleged harasser and victim, the number of individuals involved, and the type, frequency, and duration of the conduct. *See Davis*, 526 U.S. at 651. This is a highly factual and context-specific determination, requiring consideration of a full "constellation of surrounding circumstances, expectations, and relationships." *Id.* (internal quotations omitted).

The existing record can only support one instance where Plaintiff was separated from her same-sex partner on the bus before an athletic trip. One incident of alleged gender-based harassment is not pervasive. *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1366 (10th Cir. 1997) (finding that five separate incidents of sexually-oriented, offensive comments over a sixteen month span was not pervasive). Additionally, the Court finds that Plaintiff was not deprived educational benefits or opportunities at the school. Plaintiff completed her season as a member of the Pecos High School girls' basketball team, played as a member of the Pecos High School girls' softball team, and graduated Pecos High School in May 2019. UMF 22, Doc. 53 at 6. Plaintiff has failed to show deprivation of educational benefits or access. Thus, the Court finds that PISD Board of Education was not deliberately indifferent to teacher-student harassment in violation of Title IX. The Court grants Defendant PISD Board of Education Motion for Summary Judgment and dismisses Count I.

**II.      Count IV: Fourteenth Amendment Substantive Due Process Claim**

**1.  First Amended Complaint**

Defendants argue that Plaintiff was not given leave of the Court to add Count IV to her Amended Complaint. Doc. 50 at 19. Plaintiff "concedes that procedurally an opposed motion may have been required before adding this claim as an additional count." Doc. 63 at 13. Pursuant to Fed.R.Civ.P. 15(a)(2), a "party may amend its pleading only with the opposing party's written

consent or the court's leave." The Court dismissed Count I and Count V without prejudice and

with leave to amend. Doc. 35. Plaintiff filed her First Amended Complaint on April 18, 2022.

Doc. 47. In her First Amended Complaint, she added Count IV, alleging Fourteenth Amended

Substantive Due Process Violation (Invasion of Privacy under 42 U.S.C. § 1983. The Court did

not grant Plaintiff leave to amend to add an additional count. The Court finds Plaintiff violated

Rule 15(a)(2). Therefore, the Court will dismiss Count IV. For a thorough opinion, the Court

addresses the merits of Count IV and grants Defendants' Motion for Summary Judgment for the

following reasons.

## 2. The Individual Defendants are Entitled to Qualified Immunity on Plaintiff's Fourth Amendment Privacy Claim

The Individual Defendants have asserted the defense of qualified immunity, which

shields government officials "from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341

(1986)).

When a defendant moves for summary judgment on the basis of qualified immunity, the

plaintiff bears a heavy two-fold burden. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir.

2001); *Romero v. Story*, 672 F.3d 880, 884 (10th Cir. 2012). The plaintiff must put forward

evidence showing that (1) "the defendant's actions violated a constitutional or statutory right,"

and (2) "the right at issue was clearly established at the time of the defendant's unlawful

conduct." *See Medina*, 252 F.3d at 1128 (internal quotations omitted); *Davis v. Clifford*, 825

F.3d 1131, 1135 (10th Cir. 2016). "If the plaintiff fails to satisfy either part of the two-part

inquiry, the court must grant the defendant qualified immunity." *Medina*, 252 F.3d at 1128. In

determining whether the plaintiff meets this burden, the Court ordinarily accepts the plaintiff's

version of the facts—"that is, the facts alleged." *See Halley v. Huckaby*, 902 F.3d 1136, 1144

(10th Cir. 2018) (internal quotations omitted). However, at the summary judgment phase of the

litigation, "the plaintiff's version of the facts must find support in the record." *Id.* (internal

quotations omitted). "If, and only if, the plaintiff meets this two-part test does a defendant then

bear the traditional burden of the movant for summary judgment—showing that there are no

genuine issues of material fact and that he or she is entitled to judgment as a matter of law."

*Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000) (internal quotations omitted).

### A.  The Individual Defendants Did Not Violate Plaintiff's Right of Privacy.

Plaintiff alleges that Defendants violated her right to privacy when Defendants enforced

the bus seating policy. Doc. 47 at ¶ 75, 88. Defendants argue that enforcement of the bus seating

policy did not disclose Plaintiff's sexual orientation. Doc. 50 at 17. Plaintiff did not offer a

substantive argument addressing this issue.[8] Doc. 63. The Court finds that enforcement of the

bus seating policy did not infringe on Plaintiff's right to privacy because Defendants Flores and

Trujillo did not disclose Plaintiff's sexual orientation or gender identity and did not inquire into

Plaintiff's sexual orientation or gender identity.

Plaintiff's 42 U.S.C. § 1983 claims arise out of alleged Fourteenth Amendment violations

of right of privacy. Section 1983 authorizes an injured person to assert a claim for relief against a

---

[8] Plaintiff primarily focused her argument on the procedural reasons on whether the Court should accept Plaintiff's First Amended Complaint. Doc. 63 at 13. Plaintiff does not address the merits of Defendants' Motion for Summary Judgment on Count IV.

person who, acting under color of state law, violated the claimant's federally protected rights. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The Fourteenth Amendment provides in part: "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. In *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), the Supreme Court first acknowledged the individual's constitutional right to privacy under the Fourteenth Amendment. The boundaries of the right to privacy remain indistinct. However, the Supreme Court has recognized two types of privacy interests: "the individual interest in avoiding disclosure of personal matters" and "the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977).

The Supreme Court also held that individuals have the "right to be free from unwarranted governmental intrusions into matters so fundamentally affecting a person . . ." *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972). As it relates to matters fundamentally affecting a person, the Supreme Court has recognized the right to marry a person of a different race, *Loving v. Virginia*, 388 U.S. 1 (1967), the right to engage in private consensual sexual acts, *Lawrence v. Texas*, 539 U.S. 558 (2003), the right to marry a person of the same sex, *Obergefell v. Hodges*, 576 U.S. 644 (2015), the right to marry while in prison, *Turner v. Safley*, 482 U.S. 78 (1987); the right to obtain contraceptives, *Griswold v. Connecticut*, 381 U.S. 479 (1965), *Eisenstadt v. Baird*, 405 U.S. 438 (1972), *Carey v. Population Services Int'l*, 431 U.S. 678 (1977); the right to reside with relatives, *Moore v. East Cleveland*, 431 U.S. 494 (1977); the right to make decisions about the education of one's children, *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), *Meyer v. Nebraska*, 262 U.S. 390 (1923); the right not to be sterilized without consent, *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535 (1942); and the right in certain circumstances not to undergo

involuntary surgery, forced administration of drugs, or other substantially similar procedures, *Winston v. Lee*, 470 U.S. 753 (1985), *Washington v. Harper*, 494 U.S. 210 (1990), *Rochin v. California*, 342 U.S. 165 (1952).

### i.     Informational Privacy

Plaintiff has the right for nondisclosure of personal information. *See Whalen*, 429 U.S. at 599-600. However, an individual's right to privacy is limited to information in which the individual has a legitimate expectation of confidentiality. This principle is reflected in the three-part inquiry, adopted by the Tenth Circuit for "determining whether information is of such a personal nature that it demands constitutional protection" which requires the Court to "consider (1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner." *Nilson v. Layton City*, 45 F.3d 369, 371 (10th Cir. 1995).

### a.   Legitimate Expectation of Privacy

Personal information falls within constitutional protection when the individual has a legitimate expectation that the information will remain confidential. *Id.* at 372. To determine if the expectation is legitimate, the Court determines if the information is "highly personal or intimate." *Id.* "If an individual has a legitimate expectation of confidentiality, then disclosure of such information must advance a compelling state interest which, in addition, must be accomplished in the least intrusive manner." *Sheets v. Salt Lake County,* 45 F.3d 1383, 1387 (10th Cir.), *cert. denied,* 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 34 (1995). The Tenth Circuit has found that there is not legitimate expectation of privacy in an expunged criminal record, police internal investigation files, reasons for resignation or employee evaluations or allegations of rape and assault. *Nilson,* 45 F.3d at 372; *Flanagan v. Munger*, 890 F.2d 1557, 1570–1 (10th

16

Cir.1989); *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1155 (10th Cir.2001). The Tenth Circuit has found there is legitimate expectation of privacy in HIV status, wife's diary as it pertained to intimate marital matters, and confidential medical records. *Herring v. Keenan*, 218 F.3d 1171 (10th Cir.2000); *Sheets*, 45 F.3d at 1387; *A.L.A. v. West Valley City*, 26 F.3d 989, 990–91 (10th Cir.1994).

The Court finds that Plaintiff does not have a legitimate expectation of confidentiality regarding her relationship status with her girlfriend. *Livsey v. Salt Lake Cnty.,* 275 F.3d 952, 956 (10th Cir. 2001) (declining to expand right to privacy to all information of "behavior arguably reflected on the marital relationship"). Relationship status is not a highly personal or intimate information, and thus, Plaintiff cannot have a legitimate expectation of privacy of her relationship status.

It is unclear, based on the record, if Plaintiff has a legitimate expectation of confidentiality regarding her sexual orientation. The Tenth Circuit has not directly addressed whether sexual orientation falls within constitutional protection, and other Circuits have reached different conclusions depending on the facts. *Sterling v. Borough of Minersville,* 232 F.3d 190, 196 (3d Cir. 2000) (holding that there is a legitimate expectation of privacy in an individual's sexual orientation); *Wyatt v. Fletcher,* 718 F.3d 496, 505 (5th Cir. 2013) (holding that disclosure of one's sexual orientation is not a clearly established right). This Court is persuaded that sexual orientation is a matter of personal intimacy. However, whether Plaintiff had a legitimate expectation of privacy regarding her sexual orientation remains unclear. If Plaintiff already disclosed information regarding her sexual orientation, she does not have a legitimate expectation of privacy. *Nguon v. Wolf,* 517 F. Supp. 2d 1177, 1191 (C.D. Cal. 2007) (holding individual had no expectation of privacy in the context of her school regarding her sexual

orientation because she disclosed the information to five friends and openly expressed her affection to her partner in school). Private information "does not mean that an individual has no interest in limiting disclosure or dissemination of the information." *U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 770, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

### b. Disclosure

Assuming Plaintiff had a legitimate expectation of privacy of her sexual orientation, the Court finds that Defendants did not violate Plaintiff's right to privacy in the enforcement of the bus seating policy because Defendants did not disclose Plaintiff's sexual orientation. Defendant Flores requested Plaintiff and T.H to accompany him and Coaches Stout and Flores to the gym to "not be in the vicinity of other Pecos High School students who were on the bus." UMF 12, Doc. 50 at 6. By having a private conversation, Defendant Flores did not disclose Plaintiff's relationship status or sexual orientation. More importantly, the Court finds that confirming a relationship status or discussing a relationship status is not automatically a disclosure of sexual orientation. Defendant Flores asked if Plaintiff and T.H. was a couple. Doc. 38-3, Ex. 3, 0:09–0:12. Defendant Flores in his letter informed Defendant Trujillo that Plaintiff and T.H. were in a relationship. Doc. 50-4, Exh. D at 1. The Court is not convinced that confirming or discussing an individual's relationship status discloses an individual's sexual orientation.

Sexual orientation refers "to each person's capacity for profound emotional, affectional and sexual attraction to, and intimate and sexual relations with, individuals of a different gender or the same gender or more than one gender." International Commission of Jurists (ICJ), *The Yogyakarta Principles  - Principles on the Application of International Human Rights Law in Relation to Sexual Orientation and Gender Identity,* March 2007.  Gender identity refers "to each

person's deeply felt internal and individual experience of gender, which may or may not correspond with the sex assigned at birth, including the personal sense of the body (which may involve, if freely chosen, modification of bodily appearance or function by medical, surgical or other means) and other expressions of gender, including dress, speech and mannerisms." *Id.* While Plaintiff is in a same sex relationship, her sexual orientation cannot be inferred. An individual in a same sex relationship may still identify as heterosexual, homosexual, bisexual, asexual, or pansexual for a multitude of reasons, including but not limited to their gender identity. *Eg.* Andrew Park, Defining Sexual Orientation: A Proposal for A New Definition, 29 Mich. J. Gender & L. 1, 57 (2022) (providing a table of how an individual's behavior may differ from an individual's sexual attraction or an individual's identification of their sexual orientation). Therefore, the Court does not find it reasonable to infer an individual sexual orientation based solely on their relationship status with one partner. While Defendant Flores or Defendant Trujillo discussed Plaintiff's relationship status, at no point did Defendants disclose Plaintiff's sexual orientation. Therefore, Defendants did not violate Plaintiff's right to privacy.

### ii.     Plaintiff's Alleged Privacy Right

Plaintiff asserts that she has the right to be "free from unreasonable, unwarranted, and invasive inquiry into the sexual orientation or gender identities." Doc. 47 ¶ 75. The Court finds there was no invasive inquiry into Plaintiff's sexual orientation or gender identity. Flores knew Plaintiff was in a relationship with T.H. UMF 10, Doc. 50 at 5. Flores was not inquiring into Plaintiff's sexual orientation or gender identity. Flores confirmed Plaintiff's relationship status to enforce the bus seating policy. The Court finds that Plaintiff's alleged right was not violated. Therefore, the Court will not determine if Plaintiff's purported right is fundamental. Because

neither Defendant Flores or Trujillo violated Plaintiff's constitutional right, Plaintiff has failed to

meet her burden and Defendants Flores and Trujillo are entitled to qualified immunity.

### B.  The Law Governing Defendants' Conduct Was Not Clearly Established

Defendants further argue that they are entitled to qualified immunity because the law was

not clearly established at the time of the alleged violation. The Court finds that Plaintiff has not

met her burden in establishing that the law was clearly established at the time of the alleged

violation. Therefore, the Court finds that Defendants Flores and Trujillo are entitled to qualified

immunity.

"The law is clearly established if there is a Supreme Court or Tenth Circuit decision, or

the weight of authority from other courts, that has found the law to be as the plaintiff maintains."

*Gadd v. Campbell*, 2017 WL 4857429, at *4 (10th Cir. 2017). "A clearly established right is one

that is sufficiently clear that every reasonable official would have understood that what he is

doing violates that right." *Mullenix*, 136 S.Ct. 305 at 308 (internal quotation marks omitted).

"Clearly established law should not be defined at a high level of generality." *White v. Pauly*, 137

S.Ct. 548, 552 (2017) (internal quotation marks omitted). Instead, "the clearly established law

must be 'particularized' to the facts of the case." *Id.* "Nonetheless ... there need not be a prior

'case directly on point,' so long as there is existing precedent that places the unconstitutionality

of the alleged conduct 'beyond debate.'" *McCowan v. Morales*, 945 F.3d 1276, 1285 (10th Cir.

2019) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)); *A.N. ex rel. Ponder v.

Syling*, 928 F.3d 1191, 1197-98 (10th Cir. 2019) (same); *see, e.g., McCowan*, 945 F.3d at 1287

(explaining that Tenth Circuit case law provides "notice that the gratuitous use of force against a

fully compliant, restrained, and non-threatening misdemeanant arrestee [is] unconstitutional"

(emphasis added)).

Plaintiffs bear the burden of citing to case law and articulating the clearly established right they claim had been violated. *See Thomas v. Durastanti,* 607 F.3d 655, 669 (10th Cir. 2010); *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007) ("[T]he record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." (internal quotation marks omitted)).

As discussed, the Tenth Circuit has not addressed whether disclosure of sexual orientation violates an individual right for privacy. While *Sterling* held that an arresting officer threatening to disclose an individual's sexual orientation violated the individual's right for privacy, *Wyatt* distinguished *Sterling* on the basis that it did not involve the minor. *Compare Sterling v. Borough of Minersville*, 232 F.3d 190 (3d Cir. 2000) *with Wyatt v. Fletcher*, 718 F.3d 496 (5th Cir. 2013). *Wyatt* held that there was no binding precedent on "whether a student has a privacy right under the Fourteenth Amendment that forbids school officials from discussing student sexual information during meetings with parents." *Id.* at 509-510. Similarly, this Court cannot find binding precedent on whether a student has a privacy right under the Fourteenth Amendment that forbids school officials from discussing a student's relationship status in the enforcement of a bus seating policy or forbids school officials from discussing a student's sexual orientation or gender identity.

Furthermore, the Court finds that Plaintiff has failed to satisfy her burden that the right was clearly established. Instead of offering cases that include facts that are sufficiently analogues and specific so that a reasonable official would know "that his conduct was unlawful in the situation he confronted", the Plaintiffs engages in more general statements of the law, which is not enough to satisfy their burden. *Saucier v. Katz*, 533 U. S. 194, 202 (2001); *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) ("We have repeatedly stressed that courts must not "define clearly

established law at a high level of generality, since doing so avoids the crucial question whether

the official acted reasonably in the particular circumstances that he or she faced"). For the law to

be clearly established, it "requires a high degree of specificity." *Wesby*, 138 S. Ct. at 590

(emphasis added) (citing *Saucier,* 533 U.S. at 202).

Plaintiff's failure to carry her burden of showing the law was clearly established entitles

the Defendant Flores and Trujillo to qualified immunity. *See Cox v. Glanz*, 800 F.3d 1231, 1247

(10th Cir. 2015) (plaintiff failed burden under qualified immunity by failing to cite to any

Supreme Court or Tenth Circuit opinion that would indicate right was clearly established);

*Thomas*, 607 F.3d at 669 ("The plaintiff bears the burden of citing to us what he thinks

constitutes clearly established law."); *Hedger v. Kramer*, 2018 WL 1082983, at *5 (10th Cir.

2018) ("The failure to identify [] a case is fatal to the claim."). Accordingly, Defendants are

entitled to qualified immunity on Count IV under both prong of the qualified immunity inquiry.

### 3.  The Court Grants Summary Judgment on the *Monell* Claim against PISD Board of Education

Plaintiff alleges that Defendant PISD Board of Education is liable under *Monell* for the

violation of her right to privacy under the Fourteenth Amendment. Doc. 47 ¶ 78. Defendants

argue that the "bus seating rule" is not an unconstitutional or illegal policy. Doc. 50 at 14.

Defendants further argue that there is not an existence of a custom or practice because it was an

isolated and solitary incident. *Id.*

Under *Monell v. Department of Social Services*, a municipality cannot be held liable

under § 1983 on a *respondeat superior* theory or solely because it employs a tortfeasor. 436 U.S.

658, 694 (1978); *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 36 (2010). "Rather, to establish

municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2)

that there is a direct causal link between the policy or custom and the injury alleged." *Jensen v. W. Jordan City*, 968 F.3d 1187, 1204 (10th Cir. 2020) (quoting *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)). "In addition, a municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).

    A school board can incur liability for its employees' constitutional torts only if those torts resulted from a municipal policy or custom. *See Murphy v. City of Tulsa*, 950 F.3d 641, 644 (10th Cir. 2019). Five potential sources exist for a municipal policy or custom: (1) "a formal regulation or policy statement," (2) "an informal custom amounting to a widespread practice that, although not authorized by a written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law," (3) "the decision of a municipal employee with final policymaking authority," (4) "a policymaker's ratification of a subordinate employee's action," and (5) "a failure to train or supervise employees." *Id.* (internal quotations omitted); *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019). "With informal, unwritten policies, customs, or practices, the plaintiff can plead either a pattern of multiple similar instances of misconduct…or use other evidence, such as [] statements attesting to the policy's existence." *See Ward v. City of Hobbs*, 398 F. Supp. 3d 991, 1039 (D.N.M. 2019).

    As previously determined, the Court finds that that enforcement of the bus seating policy is not unconstitutional. Because there is no constitutional violation, Defendant PISD Board of Education is entitled to judgment as a matter of law on Plaintiff's *Monell* claim. *Graves*, 450 F.3d at 1218.

Furthermore, the Court finds that Plaintiff has not met her burden of demonstrating the existence of policy, practice, or custom of invasive inquiries into students' relationship status, sexual orientation, and gender identities. The existing record only supports one instance where Defendant Flores inquired about Plaintiff's relationship status to enforce the bus seating policy. Plaintiff has failed to point to similar incidents occurred by others, which "seriously undermines her claim that [Defendant] maintained a custom" of privacy invading bus-seating practices. *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995). In such a case, one instance is insufficient, as a matter of law, to show a widespread or pervasive custom or practice. *Young v. City of Albuquerque, 77 F. Supp. 3d 1154, 1187 (D.N.M. 2014).* ("A single incident is insufficient to establish the existence of a custom or practice."). Thus, Plaintiff has failed to establish that Defendants enforcement of the bus seating policy created a custom or practice of invasive inquires into students' relationship statuses, sexual orientation, and gender identities.

**4. The Court Grants Summary Judgment on the § 1983 Claim Against Trujillo.**

Defendants argue that Defendant Trujillo cannot be sued in an official capacity for the alleged constitutional policy because he did not create the policy at issue. Doc. at 14. The Court finds that Defendant Trujillo cannot be held liable because there was no underlying constitutional violation.

"A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Brown*, 662 F.3d at 1163. "Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Id.* (internal quotations omitted). "Supervisory liability allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, or implements a policy which subjects, or causes to be subjected that

plaintiff to the deprivation of any rights secured by the Constitution." *Id.* (internal quotations and alterations omitted).

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Where a plaintiff alleges a § 1983 action against a government agent in their individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* To put it simply, personal liability under § 1983 "must be based on [a defendant's] personal involvement" in a constitutional violation, "and supervisory liability must be based on [a defendant's] Policy." *Brown*, 662 F.3d at 1164–65. Thus, Plaintiff must show an "affirmative link" between Defendant Trujillo and the constitutional violations through the following elements: (1) personal involvement; (2) causation, and (3) state of mind. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013); *Keith v. Koerner*, 843 F.3d 833, 837 (10th Cir. 2016).

As the Court has previously determined, Plaintiff has not demonstrated that the Individual Defendants have violated her Fourteenth Amendment. Therefore, Defendant Trujillo is entitled to judgment as a matter of law on Plaintiff's individual and supervisory liability claims. *See Doe v. Woodard*, 912 F.3d 1278, 1290 (10th Cir. 2019) ("Supervisors cannot be liable under § 1983 where there is no underlying violation of a constitutional right by a supervisee.").

**IT IS THEREFORE ORDERED** that Defendant Pecos Independent School District Board of Education's Motion for Partial Summary Judgment on Plaintiff's Title IX Claim (Doc. 53) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Count IV of Plaintiff's First Amended Complaint (Doc. 50) is **GRANTED**.

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**